**C. D. CARPENTER et al., Petitioners,**

**v.**

**Honorable Courtney C. WELLS, Judge, Perry Circuit Court, Respondent.**

Court of Appeals of Kentucky.

June 15, 1962.

Logan E. Patterson, Pineville, appellant, pro se.

C. D. Carpenter, Stanton, appellant, pro se.

H. B. Noble, Hazard, Grant F. Knuckles, Pineville, for appellee.

MONTGOMERY, Judge.

C. D. Carpenter and Logan E. Patterson, both attorneys, have petitioned this Court to prohibit the Honorable Courtney C. Wells, Judge of the Perry Circuit Court, from compelling them to answer certain questions or from punishing them for their continued refusals to answer the questions or to make certain disclosures.

On December 12, 1961, H. C. Cantrell and four other former employees of Jewell Ridge Coal Corporation sued Jewell Ridge for various sums alleged to be due them under the National Bituminous Coal Wage Agreement of 1950. They claimed a lien under KRS 376.150 and 376.160 and sought to have it enforced on all of the property of Jewell Ridge to satisfy the payment of their claims.

The depositions of Carpenter and Patterson were taken by counsel for the employees on February 20 and April 12, 1962, respectively. Both depositions were taken by way of discovery, as stated in the response filed herein, and as captioned in the action pending between H. C. Cantrell, et al. v. Jewell Ridge Coal Corporation. Carpenter and Patterson refused to answer certain questions asked. Following

hearings the orders complained of were entered.

The depositions show that at that time Carpenter was the president of Kentucky River Coal Corporation, described as a landholding company engaged in leasing various tracts of Eastern Kentucky land for the extraction of coal. Patterson, in his deposition, described his connection with the Blair Fork Coal Company as attorney and nominal vice president. Carpenter testified that on or about August 7, 1961, a coal mine lease in which Kentucky River was the lessor and Jewell Ridge the lessee had been canceled. By the termination agreement, Jewell Ridge retained no rights in the leasehold or the effects and improvements thereon. Subsequently, the same property was re-leased by Kentucky River to Blair Fork. In essence, the questions which petitioners refused to answer were designed to elicit information concerning the terms of the cancellation agreement and of the re-lease agreement, the disposition of the improvements and equipment used by Jewell Ridge, the relation, if any, between Jewell Ridge and Blair Fork, and the organization and identity of the stockholders of Blair Fork.

Neither the petitioners nor Kentucky River and Blair Fork are parties to the Jewell Ridge lawsuit. It is alleged in the petition that none of them has any pecuniary interest in the outcome of the Jewell Ridge action; that neither Carpenter nor Kentucky River has ever owned any stock in Jewell Ridge or Blair Fork and that neither of them has any proprietary interest in either Jewell Ridge or Blair Fork except by reason of the two leases; that neither Patterson nor Blair Fork has ever owned any stock or other proprietary interest in Jewell Ridge; that Jewell Ridge and Blair Fork are entirely separate corporations, without either owning stock in the other and without common stockholders, officers, or directors; and that there exists no contractual or other relationship between the corporations. These allegations are neither admitted nor denied by respondent.

At the hearing concerning Patterson, counsel for Jewell Ridge appeared and offered to file a performance bond with good corporate surety "in order to obviate the inconvenience, expense, and embarrassment of further inquiries allegedly seeking assets of Jewell Ridge." The bond tendered was regular on its face, but counsel for the employees objected to its being filed and questioned the authority of the agent to sign the bond and the genuineness of the signature. The persistence in seeking the information after refusal of a performance bond on superficial grounds casts some doubt on the sincerity of the inquiry.

Petitioners assert that since September 1961, Blair Fork and the United Mine Workers of America have been jointly involved in charges, investigations, and proceedings before the National Labor Relations Board. They contend that the employees' counsel, who are the regularly retained counsel for United Mine Workers, are using the deposition takings as a means to gain information to be used in the NLRB proceedings.

It is apparent at once that two extraordinary legal processes are involved: discovery and prohibition.

Depositions may be taken for the purpose of discovery or for use as evidence in an action, or for both purposes. CR 26.01. Unless limited by CR 30.02 or 30.04, the scope of examination permitted in depositions taken is limited to "matter, not privileged, which is relevant to the subject matter involved in the pending action." CR 26.02. Petitioners contend that the matters inquired about were privileged and were not relevant. The latter contention is dispositive.

■ In Foremost Promotions v. Pabst Brewing Co., D.C., 15 F.R.D. 128, the rule is stated thus:

> "It is the duty of the court to keep the inquiry within reasonable bounds and to restrict questions to those having substantial relevancy to a sensible investigation."

■ Relevancy under F.R.Civ.P. 26(b), 28 U.S.C.A. has been defined as relevancy to the subject matter involved rather than as relevancy limited by the precise issues presented by the pleadings. Kaiser-Frazer Corporation v. Otis & Co., D.C., 11 F.R.D. 50; Rose v. Bourne, Inc., D.C., 15 F.R.D. 362. However, where, as here, "there being before the Court nothing but the complaint and answer, the pleadings are the touchstone by which the subject matter of the action is determined." Bullard v. Universal Millwork Corporation, D.C., 25 F.R.D. 342.

As determined by the pleadings, and as admitted by respondent, the subject matter of the action is the amount of wages owed, if any, by Jewell Ridge to certain employees and the existence of a statutory lien. Nowhere in the record of that action is there any alleged connection with either petitioner or Kentucky River, Blair Fork, or their properties. No allegations of fraud, concealment, or insolvency are made as the bases for proceeding against the properties of Kentucky River or Blair Fork. No property owned by Kentucky River or Blair Fork was described or identified as belonging to Jewell Ridge. The only reference in the complaint to the property of Jewell Ridge is in the prayer wherein a lien is prayed against the property, described in general terms, "used in its mining operation."

■ The inquiries made concerned the private affairs of nonparties to the action and were not relevant to the subject matter of the action. Arlington Glass Co. v. Pittsburgh Plate Glass Co., D.C., 24 F.R.D. 50. Nor can the questions be justified on the ground that they appear to be reasonably calculated to lead to the discovery of admissible evidence. North River Barge Line, Inc. v. Grace Line, Inc., D.C., 8 F.R.D. 117. If it be true, as petitioners charge, that the inquiries were made to gain information to be used in a matter pending before the National Labor Relations Board, they would appear to have been made for a collateral purpose, which has been condemned. Radio Corporation of America v. Solat, D.C., 31 F. Supp. 516. Hence, the same conclusion is reached as in Proctor & Gamble Distributing Co. v. Vasseur, Ky., 275 S.W.2d 941, wherein the Court concluded that the purpose of the inquiry was to learn whether or not Proctor & Gamble Distributing Company was the alter ego or distributing agency of Proctor & Gamble Company. It was pointed out that the information sought might become important if judgment should be obtained and prove to be noncollectible. It was concluded that the questions asked were not relevant and that the lower court erroneously required answers thereto.

■ Obviously, petitioners as nonparties have no remedy by appeal. There is no adequate remedy other than by prohibition. The supervisory power of this Court under Section 110 of the Kentucky Constitution has been invoked in cases where in addition to the element of great and irreparable injury there is some aspect of injustice. Schaetzley v. Wright, Ky., 271 S.W.2d 885. Injustice was there defined as "something in the nature of usurpation or abuse of power by the lower court, * * * such as to demand that the Court of Appeals step in to maintain a proper control over the lower court, * *. The object of the supervisory power of the Court of Appeals is to prevent miscarriage of justice."

■ The rule in such cases is that if an erroneous order results in a substantial miscarriage of justice, the showing of great and irreparable injury as ordinarily defined is not an absolute necessity. Bender v. Eaton, Ky., 343 S.W.2d 799. The aspect of substantial injustice without an adequate remedy by appeal or otherwise prompts the remedial action under Section 110. The Schaetzley rule was approved in Ison v. Bradley, Ky., 333 S.W.2d 784, cited by respondent, which is not in point since petitioners there were held to have had adequate remedy by appeal.

Petitioners are faced with punishment for contempt of court for refusing to answer questions which are not relevant to the issues in the action involved. It is considered that the threatened action of the lower court in the absence of an adequate remedy by appeal constitutes a usurpation or abuse of power with the requisite element of great and irreparable injury sufficient to justify the exercise of this Court's power under Section 110 of the Kentucky Constitution in order to prevent a miscarriage of justice.

Prohibition granted.