David WARD, et al., Plaintiffs,

v.

FORD MOTOR COMPANY, Defendant.

Civ. A. No. 79–C–1390.

United States District Court,
D. Colorado.

Feb. 26, 1982.

James L. Gilbert, Arvada, Colo., for plaintiffs.

Peter F. Jones, Hall & Evans, Denver, Colo., for defendant.

ORDER

CARRIGAN, District Judge.

Plaintiffs move, pursuant to this District's Local Rule 17(c)(2) and (3), for reconsideration of a discovery protective order entered by the United States Magistrate on November 17, 1981. The Magistrate ordered that the plaintiffs not disclose to anyone the contents of documents received from the defendant Ford Motor Company during discovery in this litigation, except for documents relating only to vehicles no longer made by Ford. In addition, the Magistrate ordered the plaintiffs to disclose to Ford the name and address of every person to whom they have already released documents of the kind at issue.

This product liability case arose out of an automobile collision. Three persons riding in a 1971 Mercury Montego that was rear-ended by another car were burned to death in a resulting gasoline fire. Plaintiffs claim that the gasoline tank and other fuel system components, all built by Ford, were inadequately designed to withstand rear-end collisions, and that this design defect caused the deaths.

Cases of this type are described as "fuel system integrity cases." Several hundred such cases, of which the best known involve Ford Pintos, have been filed in various courts throughout the United States. Plaintiffs in these cases assert that they arise out of the same design defect.

Facing a single large manufacturer capable of coordinating its defenses nationwide, and a complex design engineering problem, about fifty attorneys representing the plaintiffs in many of these cases have organized an information exchange or clearing house for sharing information obtained by any of them through discovery. Plaintiffs' counsel in this case, a sole practitioner, has associated himself with this organization, called The Attorneys Information Exchange Group. That Group has filed an extensive amicus curiae brief and participated in oral argument on this matter.

Ford sought the instant protective order to restrict the Group's exchange of informa-

tion. Ford argued in its initial moving papers that it needed the order to protect trade secrets. Plaintiffs' counsel voluntarily has agreed not to disclose any trade secrets turned up in discovery. Thus Ford no longer asserts any need to shield trade secrets as a basis for the protective order.

Ford's only remaining basis for seeking a protective order is its fear that the exchange of information within the Group of plaintiff's counsel would somehow cause documents or information to fall into the hands of certain "fly-by-night" non-lawyer experts. At the hearing on this motion, Ford's counsel argued that one such "expert" has used information gained through discovery in another case to conduct seminars for the general public on how Ford can be sued for injuries caused by defects in its products. Ford admitted at oral argument that neither the attorney representing these plaintiffs nor the attorneys involved in the information exchange group have acted improperly. It also has admitted that it, quite properly, coordinates its defenses in the cases filed against it throughout the United States, thus in effect providing the various attorneys defending it a service similar to that the Group provides for plaintiffs' attorneys.

Following oral argument on January 7, 1982, all counsel asked for time to work out an agreement which would accommodate the needs of all before the court decided this motion. After negotiations, and after an offer extended by the Group to Ford was neither accepted nor rejected, but apparently ignored, negotiations broke down. Therefore the matter is ripe and a decision is required to avoid further delay.

I hold that the order issued by the Magistrate sweeps too broadly in attempting to protect Ford. The plaintiffs' attorneys' discovery information exchange group reduces the effort and expense inflicted on all parties, including Ford, by repetitive and unnecessary discovery. In this era of ever expanding litigation expense, any means of minimizing discovery costs improves the accessability and economy of justice. If, as asserted, a single design defect is the cause

of hundreds of injuries, then the evidentiary facts to prove it must be identical, or nearly so, in all the cases. Each plaintiff should not have to undertake to discovery anew the basic evidence that other plaintiffs have uncovered. To so require would be tantamount to holding that each litigant who wishes to ride a taxi to court must undertake the expense of inventing the wheel. Efficient administration of justice requires that courts encourage, not hamstring, information exchanges such as that here involved.

Since the parties have agreed that no trade secrets will be disclosed by the plaintiffs' counsel in this case, the plaintiffs' motion for reconsideration is granted. The protective order entered by the Magistrate on November 17, 1981, is hereby vacated.