GRANGE MUTUAL INSURANCE COMPANY, Appellant,

v.

Hon. William W. TRUDE, Jr., Judge, Appellee,

and

Dale WILDER Real Party in Interest.

No. 2003–SC–0772–MR.

Supreme Court of Kentucky.

Oct. 21, 2004.

As Modified Dec. 1, 2004.

Rehearing Denied Jan. 20, 2005.

804 

Whitney Dunlap, III, Burnam, Thompson, Weldon, Simons and Dunlap, PSC, Richmond, Counsel for Appellant.

William W. Trude, Jr., Judge, Owsley Circuit Court, Irvine, for Appellee.

M. Austin Mehr, Austin Mehr Law Offices, Wesley Brian Deskins, Lexington, Counsel for Real Party in Interest.

KELLER, Justice.

## I. Introduction

The trial court ordered Grange Mutual Insurance Company ("Grange") to comply with sixteen discovery requests. Grange petitioned the Court of Appeals for a writ of prohibition, claiming that compliance with the trial court's order required burdensome production of irrelevant information and disclosure of privileged trade se-

crets. The Court of Appeals found that Grange failed to prove that production of the ordered discovery would result in irreparable harm and refused to grant the writ. With regard to the relevance, we find that the discovery requests are proper, albeit with a few exceptions, because they are aimed at production of relevant information and documents. And we agree that Grange failed to show irreparable harm because it did not adequately prove that compliance with the discovery requests would require disclosure of trade secrets. Therefore, we affirm in part and reverse in part.

## II. Background

Dale Wilder ("Wilder") was involved in a car accident with Sid Gabbard, who was insured by Grange. Wilder submitted a personal injury claim, and Grange assigned Erica Barnes ("Barnes") to serve as the adjuster on the claim. After negotiating with Grange for six months, Wilder was dissatisfied with the way the claim was being handled and he filed suit in the Owsley Circuit Court. Wilder's lawsuit included a personal injury claim against Sid Gabbard and a bad faith claim against Grange.

The trial court bifurcated the claims, holding the bad faith claim in abeyance until after the trial on the personal injury claim. At the conclusion of the trial of the personal injury claim, the jury returned a verdict for Wilder and awarded him approximately $26,000.00.

The bad faith claim alleges that Barnes undervalued Wilder's claim during negotiations and that she had repeatedly delayed communicating with Wilder's attorney. During pretrial preparations, Wilder submitted forty-two discovery requests to Grange. Grange objected to sixteen of those requests, citing concerns about relevancy, privacy, improper motive, trade se-

cret privileges, and the burdensome nature of the requests. The trial court overruled Grange's objections and granted Wilder's motion to compel the discovery. Grange then requested a protective order to limit the discovery allowed, or in the alternative, to prohibit public disclosure of the discovery. The trial court denied the motion without making any findings of fact. Grange again requested a protective order, specifically asking the trial court to conduct an *in camera* review of the materials to be produced to determine the extent of relevancy and privilege, and again in the alternative, to seal the file to prohibit disclosure of the discovery outside of the litigation. The trial court also denied this request.

Grange then filed a petition with the Court of Appeals for a "writ of prohibition barring the Owsley Circuit Court ... from compelling ... production ... of confidential business and trade secrets, burdensome and expensive historic data of limited relevance, and irrelevant information unrelated to the issues in the case, or limiting production to relevant information subject to appropriate Protective Orders." Grange also described the relief it was seeking as a request that the Court of Appeals "craft[ ] a discovery order which gives [Wilder] all discovery which is relevant to his claims, balanced against the legitimate needs of the Petitioner to be protected against unwarranted public disclosure, undue burden and expense, and profiteering," or at the very least, "[s]eal this file," prohibit Wilder from copying the discovery, and require that Wilder return the discovery at the conclusion of the case. Grange claimed that the production of the documents would cause irreparable harm and could not be adequately remedied on appeal. The Court of Appeals denied the petition because it found that while Grange would not have an adequate remedy on

appeal, it had failed to prove irreparable harm. Grange now brings this appeal as a matter of right.

### III. Analysis

### A. Writ of Prohibition Standard

■ A writ of prohibition is an "extraordinary remedy and we have always been cautious and conservative both in entertaining petitions for and in granting such relief."[1] We have divided writ cases into "two classes," which are distinguished by "whether the inferior court allegedly is (1) acting without jurisdiction (which includes 'beyond its jurisdiction'), or (2) acting erroneously within its jurisdiction."[2] Grange is not challenging the jurisdiction of the trial court, so we need not concern ourselves with an extensive discussion of the first class of cases.

■ Instead, Grange's claim falls under the second class. In that type of case, writs of prohibition "ordinarily ha[ve] not been granted unless the petitioner established, as conditions precedent, that he (a) had no adequate remedy by appeal or otherwise, and (b) would suffer great and irreparable injury (if error has been committed and relief denied)."[3] We "have consistently (apparently without exception) required the petitioner to pass the first test; i.e., he must show he has no ade-quate remedy by appeal or otherwise."[4] The petitioner must then also meet the requirements of the second test, i.e., by showing great and irreparable injury, alternately defined as "something of a ruinous nature,"[5] before a writ will issue. "Ordinarily if this cannot be shown, the petition will be dismissed."[6]

■ We have also held, however, that a showing of great and irreparable harm in this second class of cases is not "an absolute prerequisite"[7] for the issuance of a writ. The requirement may be put aside in *"certain special cases ... [where]* a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration."[8] But these "certain special cases" are exactly that—they are rare exceptions and tend to be limited to situations where the action for which the writ is sought would violate the law, e.g. by breaching a tightly guarded privilege[9] or by contradicting the requirements of a civil rule.[10] In those rare cases, a court may peek behind the curtain, i.e., beyond the petitioner's failure to meet the great and irreparable harm test, at the merits of the petitioner's claim of error by the lower court.

---

1. *Bender v. Eaton*, Ky., 343 S.W.2d 799, 800 (1961).

2. *Id.*

3. *Id.* at 801 (emphasis in original).

4. *Id.*

5. *Id.*

6. *Id.*

7. *Id.*

8. *Id.* (first emphasis added).

9. *See Wal–Mart Stores, Inc. v. Dickinson*, Ky., 29 S.W.3d 796, 803 (2000) (noting that deposing an attorney or paralegal involved in the case would normally fall under the "certain special cases" exception because of the attorney-client privilege).

10. *See id.* at 801–02 (noting that a judge's failure to include findings of fact as required by CR 34.01 in a premises inspection order met the exception); *Bender*, 343 S.W.2d at 803 (holding that a judge's order for production of a doctor's report was a violation of the then recently enacted Civil Rules and thus fell under the exception).

## B. Appellate Review Standard

Grange claims that a denial of a writ of prohibition is examined on appeal under the *de novo* standard of review "where the factual underpinning for application of an articulated legal rule is so wanting as to equal, in reality, a distortion of the legal rule." Grange cites *Lexington Public Library v. Clark*[11] for this standard, but it does so by taking the qualifying language in its brief—"where the factual underpinning for application of an articulated legal rule is so wanting as to equal, in reality, a distortion of the legal rule"—out of context. The language that Grange cites reads in context as follows:

> Where the challenge involves matters of fact, or application of law to facts, however, an abuse of discretion should be found only where the factual underpinning for application of an articulated legal rule is so wanting as to equal, in reality, a distortion of the legal rule. Application of any lesser standard for interlocutory intervention would ignore the extraordinary nature of the writs of prohibition and mandamus.[12]

The cited language supports an *abuse of discretion* standard rather than de novo review. And the cited language actually relates the standard to be applied by the court hearing the initial petition when it reaches the merits of the case, i.e., *after* applying the "practical and convenient formula"[13] of no adequate remedy on appeal and great and irreparable injury—not the standard applied in an appeal of the grant or denial of a writ to yet a higher court.

■ But we must review this matter under an appellate standard. The petition for this writ was filed in the Court of Appeals, which acted as a trial court because it heard the matter as an original action. And this case is now before us as a matter of right appeal, not an original action. Since the passage of the Judicial Article in 1976, the Court of Appeals has been the appropriate forum for the original action in a petition for a writ of prohibition applicable to a circuit court, and the Supreme Court is limited to appellate review.[14] But what appellate standard—de novo, abuse of discretion, or clear error—to apply to which class of writ case is not perfectly clear because we have, unfortunately, failed to make an unambiguous distinction among the three standards in our recent writ cases.

This is perhaps a result of the fact that many of the seminal opinions on the subject of writs are from original writ actions in our predecessor Court—i.e., when there was no intermediate appellate court that would hear the original writ action and from which an appeal could be taken. Those opinions did not need to consider the standard on appeal because there was no higher court that could entertain an appeal. But it could also be that no party has framed the issue so as to require careful attention on our part as to the standard of review that we ought to apply.

■ By claiming that *de novo* is the proper standard of review, however, Grange has placed this issue squarely before us. Though our previous decisions have not dealt with this question extensive-

11. Ky., 90 S.W.3d 53, 62 (2002).

12. *Id.*

13. *Bender*, 343 S.W.2d at 801.

14. A circuit court may entertain an original action for mandamus or prohibition against a district court. *Commonwealth v. Williams*, Ky.App., 995 S.W.2d 400, 403 (1999). In that event, the Court of Appeals acts as a reviewing court and is then limited to appellate review of the circuit court's decision.

ly, the basic rule is simple: "Issuance of, or a refusal to issue a writ of prohibition is in the sound discretion of the court." [15] But in other cases, we have noted that "appellate review of that decision is limited to an abuse-of-discretion inquiry, except for issues of law which are reviewed de novo." [16]

Thus, it is apparent that the proper standard actually depends on the class, or category, of writ case. De novo review will occur most often under the first class of writ cases, i.e., where the lower court is alleged to be acting outside its jurisdiction, because jurisdiction is generally only a question of law. De novo review would also be applicable under the few second class of cases where the alleged error invokes the "certain special cases" exception [17] or where the error involves a question of law. But in most of the cases under the second class of writ cases, i.e., where the lower court is acting within its jurisdiction but in error, the court with which the petition for a writ is filed only reaches the decision as to issuance of the writ once it finds the existence of the "conditions precedent," i.e., no adequate remedy on appeal, and great and irreparable harm. " 'If [these] procedural prerequisites for a writ are satisfied, "whether to grant or deny a petition for a writ is within the [lower] court's discretion." ' "[18]

But the requirement that the court must make a factual finding of great and irreparable harm before exercising discretion as to whether to grant the writ then requires a third standard of review, i.e., clear error, in some cases. This is supported by the fact that the petition for a writ is an original action [19] in which the court that hears the petition, in this case the Court of Appeals, acts as a trial court. And findings of fact by a trial court are reviewed for clear error.[20] Therefore, if on appeal the error is alleged to lie in the findings of fact, then the appellate court must review the findings of fact for clear error before reviewing the decision to grant or deny the petition.

## C. Adequate Remedy on Appeal

There is no dispute that Grange would not have an adequate remedy on appeal. As the Court of Appeals noted, Wilder has conceded this point. But for the sake of completeness we point out that there will rarely be an adequate remedy on appeal if the alleged error is an order that allows discovery. Our predecessor court noted the following:

> The present petition states, and we believe it evident, that petitioners are without an adequate remedy by appeal or otherwise .... Once the information is

---

**15.** *Haight v. Williamson,* Ky., 833 S.W.2d 821, 823 (1992).

**16.** *Rehm v. Clayton,* Ky., 132 S.W.3d 864, 866 (2004); *see also Ky. Labor Cabinet v. Graham,* Ky., 43 S.W.3d 247, 250 (2001) ("As the issues on this appeal are to be decided as a matter of law, our review of the Court of Appeals decision is not confined to an abuse of discretion inquiry.").

**17.** *See supra* notes 7–11 and accompanying text.

**18.** *Rehm,* 132 S.W.3d at 866 (alteration in original) (quoting *Peterson v. Shake,* Ky., 120

S.W.3d 707, 711 (2003) (Keller, J., concurring)).

**19.** *See* CR 81 ("Relief heretofore available by the remed[y] of ... prohibition ... may be obtained by original action in the appropriate court."); *Lexington Pub. Library v. Clark,* Ky., 90 S.W.3d 53, 56 ("A petition for an extraordinary writ is a separate civil action brought pursuant to CR 81, not an interlocutory appeal from the underlying action brought pursuant to CR 73.01(1).").

**20.** CR 52.01.

furnished it cannot be recalled .... The injury suffered by petitioners ... will be complete upon compliance with the order and such injury could not thereafter be rectified in subsequent proceedings in the case. Petitioners have no other adequate remedy.[21]

As such, we agree with the Court of Appeals that Grange would have no adequate remedy on appeal.

### D. Great and Irreparable Harm

The Court of Appeals based its decision on a finding that Grange failed to prove great and irreparable harm. Grange argues that it did show great and irreparable harm because the requested discovery is irrelevant and would require disclosure of trade secrets.

### 1. Irrelevant Discovery

■ Grange complains that almost all of the discovery requests at issue in this case aim to discover irrelevant information. But showing irrelevancy is not a method of proving great and irreparable injury. Mere possession of irrelevant information by an opposing party is not "something of a ruinous nature."[22]

Our predecessor court, however, held that discovery of irrelevant material could

fall under the certain special cases exception,[23] allowing a court to forego the great and irreparable harm requirement in the interests of justice. Thus, we must evaluate the relevance of the requested discovery to see if its production would be "a substantial miscarriage of justice ... *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration."[24]

To frame the issue, we note that CR 26.02 allows that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action .... It is not grounds for objection that the information sought will be inadmissible at the trial if the discovery sought appears to be reasonably calculated to lead to the discovery of admissible evidence." We also note that under CR 26.02, "[t]he question of relevancy is more loosely construed upon pre-trial examination than at the trial, and the Rule requires only relevancy to the subject matter involved in the action."[25]

### a. Interrogatories No. 9 and 10(b) and Request for Production No. 10

■ These discovery requests[26] focus on other bad faith claims brought against

21. *Bender v. Eaton,* Ky., 343 S.W.2d 799, 802 (1961); *see also Wal–Mart Stores, Inc. v. Dickinson,* Ky., 29 S.W.3d 796, 800 (2000) (noting the lack of adequate remedy on appeal for disclosure of trade secrets).

22. *Bender,* 343 S.W.2d at 801.

23. *Carpenter v. Wells,* Ky., 358 S.W.2d 524, 527–28 (1962).

24. *Id.* (emphasis in original).

25. *Maddox v. Grauman,* Ky., 265 S.W.2d 939, 941 (1954).

26. The production requests in their entirety are as follows:

Interrogatory No. 9: List by docket, file number, time or jurisdiction and case title every litigation involving allegations against you of either: (a) Violations of the Unfair Claims Settlement Practices Act or similar act; (b) Violations of the Kentucky Consumer Protection Act known as KRS 367.170, et al.; and (c) Allegations of common law bad faith, which allegations were made between July 1, 1989, and the present.

Interrogatory No. 10(b): With respect to each type of litigation identified above, state the following: ... (b) The result of the litigation, i.e., settled or verdict, and state the amounts paid for each matter, if any.

Grange by private plaintiffs or the Kentucky Insurance Commission. Grange argues that information and documents related to such claims is irrelevant because they cover claims against adjusters other than those involved in this case. Citing *Kentucky Farm Bureau Mutual Insurance Co. v. Troxell,*[27] Grange argues that discovery of other claims is limited *only* to claims involving the same adjusters. But *Troxell* addresses only the admissibility at trial of other claims, not their discoverability, and it states that evidence of other claims involving the same adjuster is admissible, which would imply that they are discoverable. The opinion does not contain the sort of limiting language that Grange implies. In fact, it does not even address in any way the admissibility or discoverability of claims involving other adjusters.

It is enough for us to note that discovery of information and documents related to similar claims involving other adjusters could reveal a pattern of bad faith conduct on the part of Grange. This would certainly be relevant to Wilder's bad faith claim, regardless of whether such information was admissible at trial. As such, Interrogatories Nos. 9 and 10(b) and Request for Production No. 10 were proper.

### b. Requests for Production No. 8, 9, 20, and 29

■ These discovery requests[28] focus on manuals that contain Grange's internal policies and procedures for evaluating and adjusting claims. Grange's primary complaint with discovery of these items concerns their trade secret status, which is addressed separately below. But Grange also claims that these items are irrelevant.

In support of its relevance argument, Grange cites to only one case: *Garvey v. National Grange Mutual Insurance Company.*[29] The plaintiff in *Garvey* had filed

---

Request for Production No. 10: Any and all documents produced, generated or disseminated by you which relate to any proceeding initiated by the Kentucky Insurance Commission regarding allegations of Unfair Claims Settlement Practices Act, including any market conduct surveys or exams or any complaints filed with the Kentucky Insurance Commission which relate to claims handling practices for auto policies between 1990–2001.

**27.** Ky., 959 S.W.2d 82, 85–86 (1997).

**28.** The production requests in their entirety are as follows:

Request for Production No. 8: Any records or compilations, manuals, internal memorandum, documents or other communications which are maintained by you and relate to claims by insureds for unfair claim settlement practices.

Request for Production No. 9: Any manuals, handbooks, internal publications or other instructional materials or statements of policy respecting claims handling procedures which were disseminated, utilized, or produced by you, between January 1985

and September 2001 for any claims handling in the state of Kentucky.

Request for Production No. 20: Documents pertaining to programs designed to control costs (including both indemnity and allocated/unallocated claim costs), including but not limited to the following: A. Medical costs containments; B. Medical Management; C. Peer Review; D. Bill Review; and E. Computations regarding average claim or indemnity payments. This is limited to claims involving property and casualty in the State of Kentucky for the last six (6) years.
(last sentence added in the trial court's order).

Request for Production No. 29: Documents of any type which set[ ] forth Defendant Grange Insurance policies [and] philosophies on: A. Claims handling polices; B. Providing service to policy holders; C. Good/Bad Faith claims handling; D. Extra contractual damages and suits; E. Compliance with unfair claims practices and statutes; and F. Wrongful claim handling.

**29.** 167 F.R.D. 391 (E.D.Pa.1996).

suit in which he claimed breach of contract, bad faith claim, and deceit based on the insurance company's refusal to provide coverage for fire damage to his business. The trial court granted a protective order that prohibited discovery of the insurance company's manuals, noting the following:

> The contents of these manuals do not pertain to whether the plaintiff's present claim for loss is "covered" under the insurance contract issued by the defendant. Moreover, the fact that the defendant may have strayed from its internal procedures does not establish bad faith on the part of the defendant in handling the plaintiff's loss.[30]

The bad faith claim here is not based on whether the insurance adjuster may have strayed from internal procedures. The question is whether Grange's own policies, as described in the manuals, embody or encourage bad faith practices. And use of such manuals is not without precedent in our courts.[31] As such, we disagree with the applicability of *Garvey* to this case. Grange's training and policy manuals are relevant to Wilder's bad faith claim, and absent some sort of privilege or other showing of irreparable harm, they are discoverable.

### c. Requests for Production No. 13, 14, 23, and 26

These discovery requests[32] focus on Grange's methodologies for setting reserves on claims that its adjusters handle. Again, Grange claims these are protected as trade secrets, which we address below. But Grange also makes the unique argument that this information is irrelevant to the case because Wilder already has discovery that lists the reserve amount set for his claim and because Wilder is only seeking this information for use in future litigation or to sell to other plaintiffs' attorneys.

■ The relevance of procedures for setting reserves to a bad faith claim seems obvious. Reserve setting procedures are controlled in part by statute.[33] Evidence of Grange's reserve setting procedures would help show whether Grange is following the statutory and regulatory requirements and whether the specific system for setting reserves is aimed at achieving unfairly low values. We find that this evidence is relevant to the bad faith claim.

Grange's argument that Wilder is seeking this discovery for other improper pur-

---

**30.** *Id.* at 396.

**31.** *Troxell,* 959 S.W.2d at 83 (noting that the trial court had allowed "evidence of company manuals used to train Farm Bureau adjusters" in a bad faith claim).

**32.** The production requests in their entirety are as follows:

Request for Production No. 13: All records, data or compilations showing average amounts paid on claims by any adjusters who were involved in adjusting Plaintiff's claim, and any unit they are in, for any bodily injuries, uninsured motorist, or property damage claims for the period of time, beginning 3 years prior to the accident of April 14, 1999 until present time.

Request for Production No. 14: All documents which provide definitions, methods of calculating, criteria or guidelines for the establishment of reserves.

Request for Production No. 23: All quality controlled audits or surveys for the offices handling Plaintiff's claim including but not limited to: A. Home audits or regional audits; B. Manuals or guidelines for audits; and C. Claim handling quality criteria.

Request for Production No. 26: All annual reports of the following nature from 1990–present: A. 10K reports to the Securities and Exchange Commission. B. Reports to the shareholders or policyholders if a mutual company. C. Reports to regulators/insurance departments.

**33.** *See* KRS 304.06–120–.06–180.

poses, i.e., use in other litigation or for sale to other attorneys, is even more difficult to swallow. Grange cites *Oppenheimer Fund, Inc. v. Sanders*[34] for the proposition that seeking discovery for use in other proceedings is an improper motive. But Grange's reading of *Oppenheimer* is far too restrictive because the evidence sought in that case was useful *only* in other proceedings and was not relevant to the case at hand.[35] We agree that when this is the case, then discovery of the evidence is improper.

■ But evidence that is relevant to the proceeding at hand, as is the case here, is discoverable despite the fact that the evidence may be useful in other contexts. That discovery might be useful in other litigation or other proceedings is actually a good thing because it furthers one of the driving forces behind the Civil Rules by allowing the cost of repeating the discovery process to be avoided and thereby encouraging the efficient administration of justice.[36] And "[e]ven though CR 1 no longer requires it ... the rules of procedure should be construed to secure the just, speedy, and inexpensive determination of every action."[37]

■ The exception in this group is Request for Production No. 13. The average amounts paid on other claims would only be relevant if the degree of damages or injury were comparable to Wilder's. This request, however, is so blanket as to seek primarily irrelevant records and information. As such, it falls into the certain special cases exception.

**34.** 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

**35.** *Id.* at 353, 98 S.Ct. 2380.

**36.** *Sisters of Charity Health Systems, Inc. v. Raikes,* Ky., 984 S.W.2d 464, 468 (1998) (quoting *Trammel v. United States,* 445 U.S. 40, 45, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980), quoting *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950)) ("We begin our analysis with the nearly universal rule that privileges should be strictly construed, because they contravene the fundamental principle that 'the public ... has a right to every man's evidence.' "); *accord Wauchop v. Domino's Pizza, Inc.,* 138 F.R.D. 539, 546–47 (N.D.Ind.1991) ("The risk—or in this case, the certainty—that the party receiving the discovery will share it with others does not alone constitute good cause for a protective order. Rule 1 of the Federal Rules of Civil Procedure requires that the Rules be construed so as to foster the just, speedy, and inexpensive determination of every civil action. Collaborative use of discovery material fosters that purpose; the sharing of discovery materials ultimately may further the goals of Rule 1 by eliminating the time and expense involved in 're-discovery.' " *See Williams v. Johnson & Johnson,* 50 F.R.D. 31, 32 (S.D.N.Y.1970). The efficient administration of justice should encourage such prac-

tices. *Ward v. Ford Motor Co.* 93 F.R.D. 579, 580 (D.Colo.1982) ("Each plaintiff should not have to undertake to discovery [sic] anew the basic evidence that other plaintiffs have uncovered. To so require would be tantamount to holding that each litigant who wishes to ride a taxi to court must undertake the expense of inventing the wheel."); *accord, Baker v. Liggett Group, Inc.,* 132 F.R.D. 123, 126 (D.Mass.1990) ('[T]o routinely require every plaintiff ... to go through a comparable, prolonged and expensive discovery process would be inappropriate.'); *Patterson v. Ford Motor Co.,* 85 F.R.D. 152, 154 (W.D.Tex.1980) ('The availability of the discovery information may reduce time and money which must be expended in similar proceedings, and may allow for effective, speedy, and efficient representation.'). Maintaining a suitably high cost of litigation for future adversaries is not a proper purpose under Rules 1 or 26. (alteration in original)).

**37.** *Seale v. Riley,* Ky., 602 S.W.2d 441, 444 (1980) (Wilhoit, J., concurring); *see also West v. Goldstein,* Ky., 830 S.W.2d 379, 384 (1992) ("In Kentucky in 1976, Rule 1 was rewritten to accommodate the new role of the Court of Justice in developing rules, and this sentence advising how the rules should be construed was not included. Nevertheless, the continued viability of this rule of construction is assured.").

#### d. Requests for Production No. 11, 16, and 21

■ These discovery requests [38] focus on the personnel files and the records and policies concerning the compensation of various Grange employees. We agree that many of the items likely to be found in personnel records (e.g., original job application, marital information, tax and dependant data, medical information, health insurance data, worker's compensations claims, and retirement account data) are irrelevant to a bad faith claim and thus are not discoverable. Thus, Wilder's discovery requests, to the extent that such truly personal items are covered, are overly broad.

■ Other information to be found in personnel files (e.g., related to job performance, bonuses, wage and salary data, disciplinary matters) is relevant to Wilder's claim. Job performance and disciplinary information could help show that the adjusters and their superiors had engaged in bad faith practices in adjusting Wilder's initial claim or that they had engaged in bad faith practices at other times. This information could also show Grange's knowledge or even approval of such practices. This makes those portions of the personnel records related to job performance and disciplinary matters discoverable.

■ Wilder claims that the compensation of Grange's employees could be keyed to obtaining low settlements, which in turn might encourage bad faith practices by adjusters and other employees. Wage, salary, and bonus data as to the employees described in the discovery requests shed light on this subject, as would the discovery requests as to how Grange's overall compensation system works. Thus, insofar as the requested personnel records relate to compensation of the employees involved and the other records relate to how Grange's overall compensation system works, they are discoverable.

#### e. Request for Production No. 3

■ This discovery request [39] focuses on advertising that Grange used from 1993 to 1997. Wilder failed to address this discovery request in his brief, which we read as a waiver of this issue.

---

38. The production requests in their entirety are as follows:

Request for Production No. 11: All personnel records, performance goals, job descriptions and objectives, whether in the form of personnel records, unit goals, divisional goals, regional goals, or interoffice memorandum, or any other papers or documents which describe the goals and objectives for the following employees for the time period of January 1, 1986 through the present: (a) The claims adjuster(s) who handled this claim. (b) The supervisors for (a) above. (c) The supervisors for (b) above.

Request for Production No. 16: All personnel or salary administration manuals, or other guidance manuals applicable to all adjusters or personnel involved in the claim of Plaintiff Dale Wilder which include any of the following: A. Job description; B. Salary grade classification; C. Criteria for promotion/demotion; D. Plans for adequate staff levels; E. Performance valuation and activity reviews; F. Incentive programs and retirement funds; and G. Profit sharing and stock ownership.

Request for Production No. 21: Employee handbooks including, but not limited to orientation manuals or booklets, information regarding profit sharing, stock ownership and incentive plans, Company philosophies and policies and personnel administration manuals used for employees in Kentucky.

39. The production request in its entirety reads as follows: "Request for Production No. 3: Any and all brochures or other advertising material (video, audio, or written) used in selling the motor vehicle policies covering Shawn Gabbard and Sid Gabbard, which are used to sell to the public generally, which were used during 1993–1997."

#### f. Request for Production No. 22

██ This discovery request[40] is for Grange newsletters that deal in any way with claims handling. Grange's brief mentions this discovery request only in a section title. The text following the section title focuses solely on the discovery request dealing with advertisements, without addressing the issue of newsletters. Because Grange at least mentions this request, we will not read it as having been waived. Wilder also fails to address this discovery request directly, but we read his overall argument in favor of allowing discovery related to Grange's claims handling documents as applying to this request also. On this point, we would simply note that internal company newsletters that relate to claims handling could contain evidence that shows that Grange encouraged or knew about bad faith claims handling by its adjusters, which makes those documents relevant and discoverable. Though Grange does not expressly claim these documents are covered as trade secrets, any claim that they might be is addressed below.

#### 2. Trade Secrets

In addition to claims of irrelevance, Grange attacks Requests for Production Nos. 8, 9, 13, 14, 20, 23, 26, and 29 on the grounds that the documents requested have trade secrets status. Trade secrets enjoy substantial protection in Kentucky as embodied by the Uniform Trade Secrets Act.[41] And usually a discovery request that would require the "disclosure of a trade secret . . . clearly justifies the entry of a protective order,"[42] though granting such an order would fall within the discretion of the trial court.[43]

We have previously addressed, at least in part, the issue of trade secrets in the context of a petition for writ of prohibition. In *Wal–Mart Stores, Inc. v. Dickinson*,[44] we noted that "[m]ost likely, disclosure of a trade secret would likewise rise to the level of irreparable harm as the potential harm could extend far beyond the case in which the disclosure is made."[45] Grange relies heavily on *Wal–Mart Stores* in the course of its argument that a writ of prohibition is necessary in this case. But *Wal–Mart Stores* is readily distinguishable from this case. Wal–Mart was seeking a writ or prohibition against the enforcement of the trial court's order allowing an inspection— termed a "walk-through"—of its loss prevention headquarters. We noted that "Wal–Mart makes no specific claims as to irreparable harm arising from the walk through. Rather it argues that the trial court erred in denying the protective order because its 'headquarters are not open to the public and contain extremely sensitive, proprietary, confidential information and trade secrets.'"[46] We then stated that involuntary disclosure of trade secrets usu-

---

40. The production request in its entirety reads as follows: "Request for Production No. 22: All company distributed newsletters, whether regional, national, or local dealing with claims (whether dedicated exclusively to claims handling or partially touching on the subject)."

41. KRS 365.880—.900.

42. *Wal–Mart Stores, Inc. v. Dickinson*, Ky., 29 S.W.3d 796, 800 (2000) (citing CR 26.03(1)(g)).

43. *See* CR 26.03(1) ("Upon motion by a party . . . the court . . . *may* make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." (emphasis added)).

44. Ky., 29 S.W.3d 796 (2000).

45. *Id.* at 801.

46. *Id.* at 800.

ally amounts to irreparable harm. But we refused to grant the writ under the irreparable-harm rubric, holding that "Wal–Mart's general claims are not well taken and cannot serve to establish irreparable harm." [47] While we did subsequently grant the writ in *Wal–Mart Stores*, the rationale for the writ came from *Bender's* certain special cases exception—because the trial judge had failed to make findings of fact as required by CR 34.01 in its premises inspection order—not the traditional irreparable harm approach.

■ We have already discussed the applicability of the certain special cases exception, by way of irrelevance of the proposed discovery, above, finding that the exception does not apply to Requests for Production Nos. 8, 9, 13, 14, 20, 23, 26, and 29. The remaining question then is whether Grange has proven great and irreparable harm. The Court of Appeals has already given us a negative answer to this question of fact. So we are left to evaluate whether the Court of Appeals, which acted as a trial court in the original petition for a writ of prohibition, committed clear error. In holding that Grange "failed to also demonstrate that ... production will cause it irreparable harm," the Court of Appeals also noted the following:

> The record that has been provided to us does not suggest that Grange sought to introduce specific evidence for each document, or category of documents for which it makes a claim of lack of relevance, confidentiality, or privilege, and it

is not clear whether it submitted all the documents to the trial court for its review *in camera*. What is clear, however, is that the records were neither submitted, nor sufficiently described, to us.

After reviewing the record submitted to the Court of Appeals, we must agree.

Grange's petition for a writ of prohibition contains only broad descriptions of documents, e.g., "Grange's training and or other internally created manuals, reserve setting data, policy and procedure manuals, claims payment averages, personnel and management guidelines, wage and benefits data, and other claims programs and software," [48] followed by the conclusory statement that these documents contain proprietary trade secrets. But such a blanket, vague claim of privilege is not enough. We have previously refused to grant a writ of prohibition when the petitioner has failed to provide "access to the documents, themselves, or to sufficient descriptions of their contents," [49] and we continue to do so now.

Grange attempts to evade the inevitable result of this failure to prove that the documents contain trade secrets by alleging a conflict between CR 76.36(5) and the fact that the Court of Appeals found no irreparable injury because Grange "neither submitted, nor sufficiently described" the records in question. CR 76.36(5) states that "[e]vidence in support of or against the petition, other than that which may be attached to the petition and re-

---

47. *Id.* at 801.

48. Grange spends a significant amount of time discussing its proprietary computer software programs such as Colossus. We would note that none of the discovery requests calls for the production of software. Grange appears to have misread Request for Production No. 20, which refers to "programs designed to control costs," where "program" is used in the sense of "[a]n ordered list of ... proce-

dures to be followed," AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed.2000), not the jargonistic sense of computer software. Wilder has acknowledged this in his brief, and Grange is not required to produce its software in discovery.

49. *Lexington Public Library v. Clark*, Ky., 90 S.W.3d 53, 62–63 (2002).

sponse in the form of exhibits, affidavits, and counter-affidavits, will be permitted only by order of the court." Grange claims that, under this rule, the Court of Appeals should have ordered it to submit the records that would have allowed it to prove its case, and that absent such an order, it could not prove the privilege.

While we understand that Grange did not want to simply attach the records as exhibits to their petition, it is unclear that the Court of Appeals actually needed to see the records themselves. A thorough description of the records, perhaps in the form of a privilege log, would have been enough to show irreparable harm, but as we have already noted, the descriptions that Grange did provide were not enough to require that the Court of Appeals find great and irreparable harm.

■ But more importantly, "the burden of proving that a privilege applies rests on the party claiming its benefit."[50] If Grange felt that it was necessary for the Court of Appeals to review the documents, then it could have made a motion for a CR 76.36(5) order to allow the presentation of more evidence. Grange could even have moved the Court of Appeals to undertake an *in camera* review in order to determine whether discovery of the records would have caused great and irreparable harm. But Grange made no such motion. Instead, Grange now complains that the Court of Appeals failed to grant such an order *sua sponte*. It is not the duty of the Court of Appeals to make Grange's case for it. And its failure to do so is certainly not grounds for us to reverse the denial of the writ.

### E. Trial Court's Failure to Conduct an In Camera Review

■ As a final matter, we address Grange's initial substantive claim that the trial court "erred as a matter of law" by not conducting an *in camera* review of the requested discovery. This is simply an incorrect statement of the law in Kentucky. "[T]he decision whether to engage in *in camera* review rests within the sound discretion of the trial court."[51] But review of the trial court's decision in this regard, even under the abuse of discretion standard, would require us to engage in the merits of Grange's request for a writ of prohibition. Because Grange failed to prove the conditions precedent for reaching the merits, we decline to review the trial court's failure to conduct an *in camera* review.

### IV. Conclusion

■ The majority of the disputed discovery requests are sufficiently relevant so as not to require a writ of prohibition. But some of the discovery that Wilder seeks—the advertising information under Request for Production No. 3; certain personal aspects of the personnel records under Request for Production No. 11 including original job applications, marital information, tax and dependant data, medical information, health insurance data, worker's compensations claims, and retirement account data; and records showing average amounts paid on other claims under Request for Production No. 13—is not relevant to the litigation underlying this case. As such, a writ of prohibition under *Bender's* certain special cases exception should issue as to those discovery re-

50. *Sisters of Charity Health Systems, Inc. v. Raikes*, Ky., 984 S.W.2d 464, 469 (1998) (citing ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK § 505, p. 229 (3d ed. Michie 1993)).

51. *Stidham v. Clark*, Ky., 74 S.W.3d 719, 727 (2002).

quests. Grange also failed to avail itself of the procedures that would have allowed it to prove its most significant claim—that most of the discovery requests would require disclosure of trade secrets. Therefore, we agree with the Court of Appeals that Grange failed to make a sufficient showing of great and irreparable harm that would justify a writ of prohibition.

We affirm in part and reverse in part, and thus remand this matter to the Court of Appeals for entry of a writ of prohibition in conformity with this opinion.

All concur.