# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 23, 2017
NOT TO BE PUBLISHED

FINAL

# Supreme Court of Kentucky

2016-SC-000369-MR

DATE 8/24/17 Kim Rodmon, DC

WAYNE MICHAEL PUTNAM
AND
BETH DIANE GUDEMAN     APPELLANTS

V.     ON APPEAL FROM COURT OF APPEALS
CASE NO. 2014-CA-001635-OA
FAYETTE CIRCUIT COURT NO. 05-CI-01717

HON. ERNESTO SCORSONE     APPELLEE
JUDGE, FAYETTE CIRCUIT COURT

AND

ESTATE OF JOSEPH WILLIAM PHELPS,     REAL PARTIES IN INTEREST
MARY MARGARET PHELPS,
MELANIE MCCOOL, AND
WILLIAM PHELPS, JR.

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

This writ action, arising from a post-judgment discovery dispute, is before the Court for the second time. Slightly over a year ago, the matter was before us on the issue of standing, the Court of Appeals having erroneously concluded that Appellants Wayne Michael Putnam and Beth Diane Gudeman had no concrete, personal interest in the documents they had been ordered to produce from a company in which they have a substantial interest and which they control. This Court unanimously concluded that Appellants had the requisite standing and remanded the matter for the Court of Appeals to

address the merits of the writ petition. *Putnam v. Scorsone*, 2015-SC-000125-MR (Ky. Dec. 17, 2015) (unpublished). On remand, the appellate court denied the writ, a decision we now affirm. We begin with a statement of the background facts drawn from our earlier opinion.

## I. Background

Appellants, Wayne Michael Putnam and Beth Diane Gudeman, and a third person, Stephen L. Whitman,[1] were officers and part-owners of two sets of corporations. One set of corporations consisted of a series of pharmaceutical companies that were dedicated to developing a potentially lucrative cancer drug that appears to be undergoing FDA approval. These companies appear to have been consolidated into CBA Pharma, Inc. The only asset owned by the company is the cancer drug. Appellants are not the only owners of CBA Pharma, Inc., which has approximately 800 shareholders, though they are trustees of a voting trust holding approximately 90% of the company's stock.

The other set of companies, consisting at present of Scientific Imaging Technology Enterprises, Inc., Pixelvision of Oregon, Inc., and PixelVision, Inc., manufacture digital cameras and parts for digital cameras. These companies were allegedly profitable through the late 1990s. The profits are alleged to have been used to fund the pharmaceutical companies, which had no revenue because they were in the development phase.

Joseph William Phelps became involved in a series of business

---

[1] Whitman is not part of the litigation at this time.

2

transactions with Appellants beginning in 2001, when the digital camera companies became less profitable. Specifically, Phelps provided a series of substantial loans to the companies, which Appellants personally guaranteed and which were consolidated into a promissory note in 2002. Phelps also agreed to guarantee a substantial loan from U.S. Bank, N.A. to the digital camera companies, and, in turn, Appellants agreed to a secondary guarantee under which they would repay any amount that Phelps had to pay to U.S. Bank. The details of these transactions are immaterial, but they are recounted in *Scientific Imaging Technology Enterprises, Inc. v. Phelps*, 2011-CA-002119-MR, 2014 WL 97393 (Ky. App. Jan. 10, 2014) (unpublished).

In 2003, Phelps entered into an agreement with Appellants, and some of their companies, under which he agreed to release the remaining debt on the promissory note (which at that time was still almost $3,000,000) and to release Appellants from all their guarantees, both as to the direct loans from Phelps and the loan from U.S. Bank. In exchange, Phelps received 2,000,000 shares of CBA Pharma, Inc. common stock.

As it turned out, Phelps was not well and had begun having symptoms of dementia. He was diagnosed as having Lewy body dementia, a degenerative neurological disease similar to Alzheimer's disease and Parkinson's disease. In light of this diagnosis and after discovering apparently unusual dealings in Phelps's finances, in 2004, Phelps's family contacted a lawyer to examine Phelps's relationship with Appellants and their companies.

3

In April 2005, the digital camera companies defaulted on the U.S. Bank loan, and U.S. Bank initiated the underlying litigation. Phelps, Appellants, Whitman, and the digital camera companies were named as defendants. Phelps filed an answer and cross-claim against the other defendants alleging fraud and that he had lacked capacity to enter into the 2003 release agreement. Phelps also moved the circuit court for leave to file a third-party complaint against the pharmaceutical companies, but that was denied. The motion was made and denied at least one more time in the course of the litigation.

Phelps died in October 2005, and his estate was substituted as a party. Eventually, U.S. Bank also brought suit against Phelps's wife, Mary Margaret Phelps; his daughter, Melanie McCool; and his son, William Phelps, Jr., claiming they had participated in fraud in obtaining an extension of the substantial loan from U.S. Bank. They counterclaimed for abuse of process.

Eventually, U.S. Bank settled with the estate and the named members of the Phelps family. The bank assigned its interest in its loan to the Phelps family. In exchange, the bank was paid $675,000, and the family dropped their counterclaims. The settlement agreement also provided that 20% of any money recovered based on the bank's assigned rights would be paid to the bank. This, in effect, made the estate and the Phelps family the plaintiffs in the underlying action, leaving Appellants, Whitman, and the digital camera companies as the defendants.

The case went to trial on the Phelps family's fraud and incapacity claims

4

and for collection of amounts owed on the promissory note and the U.S. Bank loan. The trial court granted a directed verdict in the family's favor as to the enforceability of the loans, reserving the question of damages. The jury found that Phelps lacked capacity to enter into the 2003 release agreement and did not reach the fraud claim. The circuit court entered a judgment against Appellants, Stephen Whitman, and the digital camera companies in an amount exceeding $12,000,000. This judgment, except for $675,000, was affirmed by the Court of Appeals, *Scientific Imaging Technology Enterprises, Inc. v. Phelps*, 2011-CA-002119-MR, 2014 WL 97393, at * (Ky. App. Jan. 10, 2014) (unpublished), and this Court declined discretionary review.

The Phelps family then began trying to collect from the judgment debtors. As part of this effort, they served a series of post-judgment discovery requests. Eventually, in 2014, the circuit court entered a discovery order commanding

> that the Judgment Debtors shall produce to the Judgment Creditors within ten ... days of the date of entry of this Order the following information and documents: The name, address, type of account, name of account and account number of any bank or other institution at which any business in which the Judgment Debtors Michael Putnam and Beth Diane Gudeman have an interest maintains any type of account; and the production of bank statements and accounts receivable and payable ledgers for such businesses for the years 2001-2005 and the past year.
>
> Such documents may be produced subject to the Agreed Protective Order and Confidentiality Agreement submitted by the parties.

Concerned that this order would lead to the production of irrelevant information about the pharmaceutical companies, particularly CBA Pharma,

5

Inc. (and, apparently, sensitive information about the company that could help its competitors), Appellants filed a petition for a writ of prohibition with the Court of Appeals seeking to bar enforcement of the order. The Court of Appeals did not address whether the remedy of a writ was available under the procedural test laid out in *Hoskins v. Maricle*, 150 S.W.3d 1 (Ky. 2004), nor did it address the substantive question whether the lower court was acting erroneously. Instead, the court denied the petition on the ground that Appellants lacked standing because they were named only in their individual capacities, the pharmaceutical companies were not named parties, and thus Appellants "ha[d] not demonstrated a personal and concrete interest in the records of CBA Pharma." As noted above, this Court vacated the order and remanded for the appellate court to address the petition on the merits.

On remand, the Court of Appeals acknowledged that claims of irrelevant discovery may be reviewed under the "certain special cases" exemption to the writ standard. On review, the appellate court found that the requested discovery was relevant; that the protective order addressed confidentiality concerns; and that there was no evidence of a substantial miscarriage of justice justifying a writ. Appellants' motion for reconsideration was denied, and this appeal followed.

## II. Analysis

As this Court has frequently stated

[a] writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about

6

to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins,* 150 S.W.3d at 10. The second class of writ, where a lower court is acting within its jurisdiction but erroneously, is invoked in cases such as this one where an order compelling discovery is disputed. In *Grange Mut. Ins. Co. v. Trude,* 151 S.W.3d 803, 808 (Ky. 2004), this Court noted that the great and irreparable harm element can be "put aside in '*certain special cases* . . . [where] a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration.'" (citing *Bender v. Eaton,* 343 S.W.2d 799 (Ky. 1961), emphasis added). After concluding there would be no adequate remedy on appeal if irrelevant discovery was ordered, the *Grange Mut.* Court turned to Kentucky Rule of Civil Procedure (CR) 26.02 and the definition of relevancy, noting the parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Moreover, "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." CR 26.02. The Court concluded that a writ was not available for the majority of the disputed discovery requests in that case because they were sufficiently relevant to the plaintiff's bad faith claim against the insurance company. Certain information in personnel records, regarding advertising and showing the amounts paid to

7

settle previous bad faith claims was deemed irrelevant and writ worthy. *Id.* at 818. Finally, the *Grange Mut.* Court noted that the insurance company had totally failed to support its claim regarding trade secrets, having only made conclusory statements without ever providing the documents themselves for *in camera* review or even a detailed privilege log. *Id.* at 817-18.

Applying these standards in this case, the Court of Appeals concluded that Appellants direct and control CBA Pharma, a company that was involved in the circumstances underlying the judgment if for no other reason than the fact Appellants transferred 2,000,000 shares of CBA Pharma stock to Phelps in exchange for the release of their debts. Appellants dispute that CBA Pharma was involved in the underlying circumstances that led to the $12 million judgment, emphasizing that the CBA Companies[2] were not borrowers or guarantors on the underlying indebtedness. They insist that the CBA Companies are in no different position than would be General Motors if Appellants had transferred or pledged GM stock to Phelps. This analogy to a leading Fortune 500 company is entirely inapt. Although extremely complicated, the facts leave little doubt that Appellants are intimately involved with the various CBA Companies, their founding and their operations, past and present. Indeed, the Phelps family, as Judgment Creditors, currently garnish Appellants' wages from CBA Pharma, which was formed in 2013. According to the Phelps family, there is also evidence of funds shifting from the digital

---

[2] Appellants use "CBA Companies" to refer to CBA Pharma, Inc., and its predecessors.

8

camera companies (to which Phelps loaned money and for which he guaranteed the bank loan) to a CBA entity. Given the substantial judgment and the Judgment Creditors' interest in identifying Appellants' available assets, including any funds that may be derived from or reside in a company or companies in which they have substantial ownership and controlling interest[3], we cannot say that the trial court abused its discretion in concluding that the requested discovery was relevant to the Judgment Creditors' collection efforts.

Even if we were less than assured about the relevancy of the requested documents, a writ would still be unavailable in the absence of evidence that production of the documents would result in "a substantial miscarriage of justice." *Grange.Mut.*, 151 S.W.3d at 808. Appellants profess concerns about confidential records that could benefit competitors but, as in *Grange Mut.*, they have not taken the steps to establish that fact through *in camera* production or even a detailed "privilege" log. *Id.* at 818. Moreover, given the trial court's order requiring production "subject to the Agreed Protective Order and Confidentiality Agreement submitted by the parties" we find Appellants' concerns about the risk of disclosure particularly unavailing. Recognizing the efficacy of a negotiated protective order/confidentiality agreement in no way "read[s] out" the relevance requirement in CR 26 as

---

[3] As usual, we have a limited record in this writ action but Appellants readily acknowledge that while CBA Pharma has over 800 shareholders "[t]he majority of the company's common stock is held in voting trusts whose trustees are Mr. Putnam, Ms. Gudeman and Stephen Whitman."

Appellants' hyperbolically suggest. There is no prospect of a "substantial miscarriage of justice" under the circumstances presented.

For the foregoing reasons, the Court of Appeals' Order Denying Petition for Writ of Prohibition is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Derise Duane Cook
John Milton Sosbe
Duane Cook & Associates, PLC

COUNSEL FOR APPELLEE:

Ernesto Scorsone, *pro se*

COUNSEL FOR REAL PARTIES IN INTEREST:

Sam Preston Burchett

William Joseph Walsh, IV
Buchenberger Walsh, PLLC