Mark EDWARDS; Edwards Moving & Rigging, Inc.; Fireside Properties, Inc.; Cleo Housing, Ltd.; Cleo Housing, II, Ltd., Appellants

v.

Hon. Charles R. HICKMAN, Judge, Shelby Circuit Court and Stephen Edwards (Real Party In Interest), Appellees

and

Stephen Edwards; and Hon. Charles R. Hickman, Judge, Shelby Circuit Court, Cross–Appellants

v.

Mark Edwards; Edwards Moving & Rigging, Inc.; Fireside Properties, Inc.; Cleo Housing, Ltd.; Cleo Housing, II, Ltd., Cross–Appellees.

Nos. 2005–SC–001021–MR, 2006–SC–000012–MR.

Supreme Court of Kentucky.

Nov. 1, 2007.

As Modified Nov. 21, 2007.

Alan N. Linker, Seiller Waterman, LLC, James Gregory Troutman, Louisville, KY, Counsel for Appellant and Cross Appellee, Mark Edwards.

W. David Kiser, Jennifer Hatcher, Ackerson & Yann, PLLC, Louisville, KY, Counsel for Appellants and Cross Appellees, Edwards Moving & Rigging, Inc., Fireside Properties, Inc., Cleo Housing, Ltd., Cleo Housing, II, Ltd.

Charles Hickman, Judge, Shelbyville, KY, pro se.

David T. Enlow, Enlow & Enlow, PLLC, Richard J. Head Lexington, KY, Counsel for Real Party In Interest and Cross Appellant, Stephen Edwards.

Opinion of the Court by Justice NOBLE.

This matter is before the Court on the appeal and cross-appeal of a Court of Appeals decision on a petition for a writ of prohibition. The Appellants—Mark Edwards; Edwards Holdings, Inc.; Edwards Moving & Rigging, Inc.; Fireside Holdings, Inc.; Cleo Housing, Ltd.; and Cleo Housing II, Ltd.—sought the writ to bar the enforcement of two orders of the Shelby Circuit Court allowing discovery of their business records, even though three of them were not named as parties in the underlying lawsuit. The Court of Appeals granted the writ as to the unnamed parties, but denied it as to the others. Because the Court of Appeals erred as a matter of law in granting the writ in part but was not clearly erroneous in denying the other part, its order is affirmed in part and reversed in part.

## I. Background

### A. The Origin of the Companies

The underlying litigation involves the convoluted question of the ownership of several companies: Edwards Holdings, Inc.; Edwards Moving & Rigging, Inc.; Fireside Holdings, Inc.; Cleo Housing, Ltd.; and Cleo Housing II, Ltd.

All of these companies can be traced back to Edwards House Movers, Inc., which was founded in 1961 by Bill Edwards, the father of Stephen and Mark Edwards. The company incorporated in

1984 and issued stock, with 90% of the shares going to Bill, 5% going to Stephen, and 5% going to Bill's wife. In 1988, in the midst of a divorce, Bill transferred his 90% ownership interest to Mark. In 1992, the company was renamed and restructured, resulting in Edwards Holdings, Inc. and Edwards Moving & Rigging, Inc.

Edwards Moving & Rigging is wholly owned by Edwards Holdings, which in turn is owned by the Edwards siblings. Mark owns 90% of the company, while Stephen and his sister Lynn each own 5%.

Mark incorporated Fireside Properties, Inc. in 1999 and issued all of its stock to himself. Cleo Housing, Ltd. and Cleo Housing II, Ltd., both limited partnerships, were started in 1999 and 2003, respectively with Fireside Properties as their sole general partner.

## B. The Underlying Litigation

Stephen worked for Edwards Moving & Rigging from 1993 until April 2004. In May 2004, he filed the lawsuit against Mark that gave rise to the current writ proceedings. Edwards Holdings and Edwards Moving & Rigging subsequently intervened as defendants in the suit.

In his complaint, Stephen alleged he was entitled to approximately one-third of the ownership interest that Mark had in Edwards Holdings, based on his claim that his father transferred the 90% ownership interest in Edwards House Movers, the original company, to Mark in trust to be equally divided among the three siblings (Mark, Stephen, and their sister, Lynn Hobbs) upon meeting certain conditions. Stephen claimed that he was supposed to receive his shares when he graduated from college and began working full-time for the company, but that his brother repeatedly declined to transfer the shares after he satisfied the conditions. Stephen also claimed an ownership interest in Fireside Properties and the Cleo partnerships because those entities were formed with the assets of the other companies in which he has an ownership stake.

Stephen's complaint also asked for access to the corporate records of Edwards Moving & Rigging, Edwards Holdings, and Fireside Properties under KRS 271B.16–020. Though the complaint mentions the Cleo partnerships, it includes no specific request for their records. Requests for those documents appeared in subsequent motions.

Mark responded by claiming he owned the 90% interest in Edwards House Movers (and therefore Edwards Holdings) outright, not in trust, because it was given to him in consideration for taking over running the company and paying his father's debts (including post-divorce maintenance owed by his father to his ex-wife) and certain debts of the company. In so doing, he reestablished the business's credit and made it profitable, all the while bearing the risk associated with a small company by personally guaranteeing its loans. He also employed family members, including his father, sister, brother-in-law, and his brother, Stephen. Mark further claimed that he was the sole owner of Fireside Properties, and, in turn, the Cleo partnerships, because he started those companies with his own personal funds.

In June 2004, Stephen started his own company, Edwards House and Building Movers, LLC. Mark filed a separate lawsuit alleging breach of fiduciary duties and trade name and trademark infringement by Stephen. (That suit is not the subject of the current writ proceedings.)

Discovery in Stephen's lawsuit began in August 2004. Stephen moved for the production of the business records of the five existing companies and partnerships based on KRS 271B.16–020(2), which grants cor-

porate shareholders the right to inspect certain corporate documents, and KRS 362.409, which grants owners of partnerships the right to inspect certain partnership documents. Ultimately, the parties reached an agreement that the documents would be the subject of an independent audit instead of being produced in traditional discovery, and the circuit court instructed the parties to draft an order reflecting the agreement.

Nevertheless, several days after the agreement, Stephen served interrogatories and requests for the production of documents on Mark and the two companies named in the suit, Edwards Holdings and Edwards Moving & Rigging. The interrogatories and requests for documents concerned not only the named defendant companies, but also Fireside Properties and the Cleo partnerships.

Mark complied with the discovery requests and made his personal records available for inspection. Various documents of the companies, including Fireside Properties and the Cleo partnerships, were included in the records. Stephen's attorney reviewed these documents at the office of Mark's attorney and marked many of them, including some related to the businesses, to be copied for Stephen's use in the litigation. The documents related to the various businesses, however, were never copied and delivered. Mark asserted that the documents in question related only to the businesses, not his personal finances, and thus Stephen would have to contact the attorneys for the companies to obtain them.

During this time, the parties continued to negotiate the scope of the agreed-to independent audit. The negotiations broke down, however, when they could not agree on how far back in time the audit would cover and whether Fireside Properties and the Cleo partnerships would also be included. The parties returned to the circuit court to resolve the dispute in January 2005. Several months of litigation over the scope of the audit followed.

On July 5, 2005, the circuit court ordered that the independent audit proceed, that it cover the years 1988 to 2004, and that it apply to all of the companies. Edwards Holdings and Edwards Moving & Rigging sought to amend the order to omit the unnamed parties (Fireside Properties and the Cleo partnerships) from its scope. Stephen filed a separate motion to compel the production of the documents that his attorney had previously marked for copying at the office of Mark's attorney. On August 11, 2005, Fireside Properties and the Cleo partnerships moved to intervene in the case for the limited purpose of challenging the July 5 order on the grounds that they were not parties to the litigation.

The circuit court subsequently granted the limited intervention motion of Fireside Properties and the Cleo partnerships, but declined to except them from the discovery order. The court also entered an order dated August 25, 2005, granting Stephen's motion to compel the production of the marked documents.

## C. The Writ Petition

The Appellants in this case then filed an original action in the Court of Appeals for a writ of prohibition against the enforcement of the July 5, 2005 and August 25, 2005 orders. Specifically, they argued that the circuit court had no jurisdiction over Fireside Properties and the Cleo partnerships because those entities were not named as parties to the suit, and that the order would cause Edwards Holdings and Edwards Moving & Rigging great and irreparable harm by requiring the disclosure of proprietary and confidential business records to a direct competitor.

The Court of Appeals granted the writ as to Fireside Properties and the Cleo partnerships, agreeing that the circuit court had no jurisdiction over them. It also noted that as non-parties, they lacked the avenues of redress available to parties, and that the documents could be obtained through other means, namely, by a subpoena duces tecum. The court denied the writ as to Edwards Holdings and Edwards Moving & Rigging, noting that they had failed to show that production of the documents would harm their competitive position relative to Stephen's company, that the documents are confidential and proprietary, and that any privilege applied.

This appeal and cross-appeal followed as a matter of right. Ky. Const. § 115.

## II. Analysis

The Appellants ask this Court to affirm and expand the scope of the writ of prohibition granted by the Court of Appeals to protect all of the companies. Stephen Edwards challenges expansion of the writ and asks that the limited writ granted by the Court of Appeals be reversed.

■■■ The writs of prohibition and mandamus are extraordinary in nature, and the courts of this Commonwealth "have always been cautious and conservative both in entertaining petitions for and in granting such relief." *Bender v. Eaton,* 343 S.W.2d 799, 800 (Ky.1961).

This careful approach is necessary to prevent short-circuiting normal appeal procedure and to limit so far as possible interference with the proper and efficient operation of our circuit and other courts. If this avenue of relief were open to all who considered themselves aggrieved by an interlocutory court order, we would face an impossible burden of nonappellate matters.

*Id.* This policy is embodied in a simple statement from a recent case: "Extraordinary writs are disfavored...." *Buckley v. Wilson,* 177 S.W.3d 778, 780 (Ky.2005).

■■■ Despite this, petitions for the extraordinary writs are still common in the appellate courts. In order to facilitate review of petitions for the extraordinary writs without examining the merits of a writ claim in depth, petitioners are required to satisfy one of two tests to determine whether the remedy of a writ is even available. Those tests, which essentially break writs down into two distinct classes, are as follows:

A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky. 2004). The second class of writs includes a subset for "certain special cases" where "a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Bender,* 343 S.W.2d at 801.

On appeal, the Appellants claim they are entitled to a writ of prohibition under all three classes.

### A. Lack of Jurisdiction

The Appellants claim that because Fireside Properties and the Cleo partnerships are not parties to the underlying litigation, the circuit court lacked jurisdiction to order discovery against them and they

lacked appellate remedies. The Court of Appeals agreed with this argument, relying on it as the basis for granting the requested writ in part.

 If one of the writ-prerequisite tests is met, the decision whether to grant a writ of prohibition lies in the sound discretion of the reviewing court, and appellate review of that decision is limited to an abuse of discretion inquiry. However, where the prerequisite-test involves a question of law, that question is reviewed de novo. *Rehm v. Clayton*, 132 S.W.3d 864, 866 (Ky.2004); *see also Kentucky Labor Cabinet v. Graham*, 43 S.W.3d 247, 251 (Ky.2001) ("As the issues on this appeal are to be decided as a matter of law, our review of the Court of Appeals decision is not confined to an abuse of discretion inquiry."). Thus, because the question of the circuit court's jurisdiction in this case was one of law, appellate review of it is de novo.

 In framing the question as whether the circuit court had jurisdiction to compel production of documents by Fireside Properties and the Cleo partnerships as nonparties, the Court of Appeals misconceived the issue. Because Stephen Edwards sought the discovery in part through requests for production of documents pursuant to CR 34.01, the issue is not whether the affected business entities were parties to the lawsuit, but whether the documents sought were "in the possession, custody or control of the party upon whom the request is served...." CR 34.01. The requests were served on the named parties, which of course includes Mark Edwards.

Mark Edwards claims to be the sole owner of Fireside Properties. The records of the Secretary of State, which the Appellants included with their brief, show that Mark is the sole officer and incorporator of Fireside, which, in turn, is the sole partner in both Cleo partnerships. Mark

has characterized Fireside and the Cleo partnerships as very closely held businesses. Assuming that his claim is true, he clearly has possession, custody, or control of the business and financial records of Fireside Properties and, by extension, the Cleo partnerships. The fact that Mark has actively demonstrated possession, custody, and control of some of these documents—by including them in the documents that Stephen's attorney was previously allowed to inspect—underscores this point. Moreover, as the sole owner, Mark, or his agents, exercise possession, custody, and control to the exclusion of all other persons or entities.

 Allowing Mark's claim that the business records of a closely held business like Fireside Properties are immune from discovery under CR 34.01 would require courts to succumb to transactional sleight-of-hand. The fact that Mark owns the companies in full, or appears to own them (since the proper ownership of the companies is at the heart of the underlying lawsuit), means that he owns, or at least appears to own, the records in question. Mark's proposed rule would also allow the owner of such a closely held business to increase the complexity and cost of litigation by forcing the party seeking discovery to resort to an alternative such as a deposition combined with a subpoena under CR 45, despite the fact that the sole owner of the business entity in question is a named party and exercises complete control over the business's records. Such a rule would be at odds with the notion that the Civil Rules are to be " 'construed to secure the just, speedy, and inexpensive determination of every action.'" *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 814 (Ky. 2004) (quoting *Seale v. Riley*, 602 S.W.2d 441, 444 (Ky.App.1980) (Wilhoit, J., concurring)); *see also West v. Goldstein*, 830 S.W.2d 379 (Ky.1992) (noting that while

the Civil Rules no longer include express language stating how they should be interpreted, "the continued viability of this rule of construction is assured").

■■■ This is not to say that a business entity's records are always, or even likely, discoverable through a shareholder or partner. The decision to allow such discovery must be based on whether the shareholder truly has control, custody, or possession of the records in question. As this Court has previously noted, " 'Control with respect to the production of documents is defined not only as possession but as the legal right to obtain the documents requested upon demand.' " *Metropolitan Property & Cas. Ins. Co. v. Overstreet*, 103 S.W.3d 31, 45 (Ky.2003) (quoting *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229–30 (Fed.Cir.1996)). Ordinarily, a mere shareholder or partner will not exercise such a degree of control over corporate records sufficient to satisfy the requirement of having a legal right to obtain them on demand, unless the relationship between the shareholder or partner and the business is so close as to make the business little more than an alter-ego. In such a case, the partner or shareholder enjoys the necessary legal control over the documents to subject them to discovery under CR 34.01.

Finally, the Appellants argue in passing that the records of Fireside and the Cleo partnerships are totally irrelevant to the underlying lawsuit because those companies did not exist until several years after the transfer of stock of Edwards House Movers, (the predecessor of Edwards Holdings and Edwards Moving & Rigging). They argue that such information would only be relevant in a shareholder derivative action on behalf of the shareholders of Edwards Holdings. Even if Mark's claim about his ownership of Edwards Holdings is true, Stephen would still hold a 5% stake in that company, thus giving him standing to pursue any claim for misappropriation of that company's funds to start Fireside and the Cleo partnerships. More importantly, however, Stephen's complaint includes a specific count in which he claims that Mark acted to deprive him of an ownership interest in Fireside and the Cleo partnerships. This claim alone makes the records of Fireside and the Cleo partnerships sufficiently relevant to allow discovery, especially given the expansive notion of relevancy for discovery purposes.

Given the total ownership relationships between Mark Edwards and Fireside Properties, and between Fireside and the Cleo partnerships, the Court of Appeals erred in concluding that the circuit court acted outside its jurisdiction in ordering the production of the business and financial records of Fireside and the partnerships. As such, the remedy of a writ should not even have been available, much less granted, on this ground.

### B. Great and Irreparable Harm

■■■ The Appellants also claim they are entitled to a writ of prohibition regarding the production of the business and financial records of Edwards Holdings and Edwards Moving & Rigging, because production of those documents requires the release of confidential and proprietary information to a plaintiff who is a direct competitor. The Court of Appeals denied the writ in this regard, finding that the Appellants had failed to provide sufficient evidence that production of the documents would harm their competitive position, or that the documents were confidential and proprietary, and thus could not show great and irreparable harm.

■■■ This finding is subject to clear error review, the most deferential appellate review. *Grange Mut. Ins. Co. v.*

*Trude*, 151 S.W.3d 803, 810 (Ky.2004). The Court of Appeals' finding in this regard was not clearly erroneous. The Appellants' claim that production of the documents will harm their competitive position is unsupported by the evidence.

Additionally, the Appellants' claim disregards the nature of the discovery ordered by the circuit court. The circuit court's August 2005 order simply required the production of documents that Mark Edwards had already voluntarily allowed Stephen Edwards's attorney to inspect. Further, the business and financial documents covered by the July 2005 order were not to be produced directly to Stephen or his attorney, but were to be produced to an independent certified public accountant for an audit. Moreover, the documents covered by the July 2005 order are subject to extensive confidentiality protection language that comprises approximately one-fourth of that order. The confidentiality ordered by the circuit court applies both to the independent accountant and to Stephen and his attorney. Such protection functions as a safety valve, giving the circuit court the power to control the use of the discovery, and is sufficient to avoid great and irreparable harm. Therefore, the Court of Appeals' decision to deny the writ in part was not an abuse of discretion.

### C. Certain Special Cases

■ The Appellants' brief opens with the claim that they are actually entitled to the writ under the "certain special cases" exception described in *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky.1961). This specific argument was not presented to the Court of Appeals. Because the Court of Appeals is essentially the trial court when it considers an original petition for a writ, the Appellants would at first glance appear to have violated the maxim that an appellant "will not be permitted to feed one can

of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky.1976). However, "certain special cases" is essentially a subclass of the second class of writ cases, which the Appellants discussed extensively in their original petition. Thus, despite the fact that the Appellants' argument at the Court of Appeals did not focus specifically on the "certain special cases" subset, their argument in this regard must be reviewed.

■ The Appellants first claim that they meet the exception because the documents in question are confidential and proprietary and therefore are essentially privileged. Rather than discussing the specific facts that prove the confidentiality of these documents, the Appellants instead cite two cases for the general proposition that "the inner workings of a corporation [are] 'generally recognized as confidential and proprietary.' " *Hoy v. Kentucky Industrial Revitalization Authority*, 907 S.W.2d 766, 768 (Ky.1995); *see also Marina Management Services, Inc. v. Commonwealth, Cabinet for Tourism Dept. of Parks*, 906 S.W.2d 318 (Ky.1995). These cases, however, concern whether corporate records revealed to a government agency pursuant to regulations are then subject to public inspection under the Open Records Act. While such a generalization about the tendency of financial and corporate records to be confidential was held to be sufficient to avoid subjecting them to the Open Records Act, avoiding discovery during the course of litigation requires a specific showing of privilege, as discovery is allowed "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." CR 26.02(1). The privileges usually contemplated by the rule are specific. *See, e.g., Grange Mut. Ins. Co.*, 151 S.W.3d at 816–17 (discussing the privilege accorded to trade secrets, which

are statutorily protected). A general claim that all business and financial records are confidential simply is insufficient to defeat a proper discovery request. Additionally, as noted above, any concern about Stephen Edwards gaining a competitive advantage through the revelation of the information is alleviated by the stringent confidentiality requirements on most of the material as ordered by the circuit court.

The Appellants also argue that the circuit court's order does harm to the overall administration of justice because it renders *meaningless the statutes on inspection of business records by a corporate shareholder*, KRS 271B.16–020, or by a partner, KRS 362.409 (now KRS 362.1–403). Such an argument might have merit if Stephen Edwards were seeking discovery only under those statutes, which function primarily to control shareholder and partner access to a business's records in the ordinary course of business. During litigation, however, the procedures allowed under the civil rules are broader than those allowed under the shareholder/partner statutes, assuming that the plaintiff has made a colorable claim for something other than mere enforcement of KRS 271B.16–020 or KRS 362.409 (now KRS 362.1–403), which is the case here. The confusion as to this issue appears to have arisen from Stephen's coupling of his ownership claims against Mark with his claim seeking enforcement of KRS 271B.16–020, when the latter was largely unnecessary given the nature of his ownership claims.

Additionally, the Appellants argue that they are entitled to the writ because the circuit court's August 2005 order, which compels the production of copies of the documents that Stephen's attorney was allowed to inspect in the office of Mark's attorney, essentially undermines the court's July 2005 order, which the Appel-

lants claim embodies the parties' agreement as to the independent audit. This, of course, assumes that the two orders are somehow contradictory (they are not) and that the earlier order is somehow superior. The July 2005 order requires a general disclosure of records to the independent auditor, whereas the August 2005 order requires production to Stephen of those limited documents that his attorney reviewed and designated for copying in Mark's office. Nevertheless, if the orders are contradictory to some degree, that does not give rise to such dire circumstances as to call for relief by way of a writ of prohibition.

Finally, the Appellants also claim the non-party nature of Fireside Properties and the Cleo partnerships is sufficient to require the issuance of a writ under the "certain special cases" exception. The discussion above addresses this claim. The nature of Mark Edward's ownership interest in Fireside and Cleo partnership means that the companies' documents can be obtained through him pursuant to CR 34.01.

Allowing discovery to proceed against the Appellants in this case does not give rise to the sort of substantial miscarriage of justice required to grant a writ under the "certain special cases" subclass of writs.

For the foregoing reasons, the portion of the Court of Appeals' order granting the writ of prohibition is reversed and the portion of the order denying the writ is affirmed.

LAMBERT, C.J.; ABRAMSON, CUNNINGHAM, SCHRODER and SCOTT, JJ., concur. MINTON, J., not sitting.