# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 26, 2018
NOT TO BE PUBLISHED

Supreme Court of Kentucky FINAL

2017-SC-000298-MR  DATE 5/17/18 Kim Redmon, DC

JEFFEREY O. KATZ                                                                          APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2017-CA-000316-MR
FAYETTE CIRCUIT COURT NO. 16-CI-03549


HONORABLE PAMELA R. GOODWINE,                                    APPELLEE
JUDGE, FAYETTE CIRCUIT COURT


AND


MILLER, GRIFFIN & MARKS, P.S.C.          REAL PARTIES IN INTEREST


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Appellant, Jefferey O. Katz, appeals from an opinion of the Court of

Appeals denying his petition for a writ of prohibition to prevent Appellee, a

judge of the Fayette Circuit Court, from enforcing her order compelling the

disclosure of 322 emails exchanged between Katz with Jerry Jamgotchian.

Katz contends that the emails are irrelevant and, moreover, are protected from

disclosure under the attorney-client and work-product privileges.  The

discovery is sought by the Real Party in Interest, the law firm Miller, Griffin,

and Marks, P.S.C. (MGM), in a lawsuit filed by the firm against Katz alleging

malicious prosecution in connection with two lawsuits Katz filed against the firm while acting as counsel for James Fitzgerald and Robert Raphaelson.[1]

For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Katz represented James Fitzgerald in a suit filed in the Fayette Circuit Court against MGM. Fitzgerald was a former client of MGM and his suit claimed that MGM had violated its ethical duties to him by improperly favoring the interests of another client over the interests of Fitzgerald. Fitzgerald's claims were eventually dismissed by summary judgment, both on the merits of the claims and on the grounds that the suit was not filed within the applicable statute of limitations. No appeal was taken from the order of dismissal in that case. Katz also filed a nearly identical lawsuit against MGM on behalf of a former MGM client named Robert Raphaelson. That suit was also dismissed, but the dismissal was appealed, and therefore, is not final.

MGM then filed in the Fayette Circuit Court the lawsuit underlying this writ action, alleging that Katz had engaged in malicious prosecution in the Fitzgerald case.[2] Because the Raphaelson litigation is not final, MGM has not filed suit against Katz for malicious prosecution in relation to that action, but

---

[1] The present litigation is directly related to the *Fitzgerald v. MGM* lawsuit only; however, the *Raphaelson v. MGM* lawsuit, for reasons explained below, is nevertheless significant to the present lawsuit and overlaps with the scope of misconduct alleged in this case.

[2] MGM's ancillary claim of abuse of process was dismissed by the trial court.

has represented that it will do so when its claim ripens.[3] Consequently, the instant writ action involves only Katz's alleged misconduct in the Fitzgerald case, but because of its close connection to the Raphaelson case, Katz's conduct in that action has become a significant issue in MGM's current claim against Katz.

According to MGM, the common thread which links the Fitzgerald and Raphaelson cases is Jerry Jamgotchian. MGM alleges that Jamgotchian is vindictive and has for several years harbored ill-will toward MGM. MGM claims that he instigated the lawsuits filed against MGM by Katz on behalf of Fitzgerald and Raphaelson, who MGM further contends, were simply nominal parties used to further Jamgotchian's vindictive objectives. As such, the conduct and motives of Jamgotchian toward MGM and his relationship and interactions with Katz are relevant issues in the underlying malicious prosecution claim.

During the discovery phase of MGM's claim against Katz, MGM sought to discover communications between Katz and Jamgotchian, including 322 emails between Katz and Jamgotchian. Katz refused to turn over the emails, claiming they were irrelevant to the litigation and were protected by the attorney-client and work-product privileges. Judge Goodwine granted MGM's motion to

---

[3] In the midst of the Raphaelson lawsuit, Mr. Raphaelson filed for bankruptcy and prosecution of the lawsuit was taken over by the bankruptcy trustee, Shelly Krohn; after that, court records reflect the Raphaelson case as *Krohn v. MGM.*

3

compel production of the 322 emails exchanged within one year preceding the filing of the Raphaelson case. Judge Goodwine stated in her order:

> With respect to any document withheld by Defendant based on any objection, including attorney/client or work product privileges, Defendant shall produce a detailed privilege log with descriptions of the basis for an objection, date and description of the documents withheld sufficient to establish the existence of the elements of the privilege (i.e., more than their titles) so as to allow a meaningful review by this Court and any higher courts. A similar log shall be produced with respect to any redaction from documents produced to Plaintiff.

Katz moved for reconsideration and submitted a privilege log what amounted to a blanket entitlement to attorney-client and work-product privilege covering all of his communications with Jamgotchian. The judge denied the motion for reconsideration, rejected Katz's assertion of a blanket attorney-client/work-product privilege, rejected the assertions of privilege as contained in his privilege log, and again ordered Katz to disclose the 322 emails.

Katz sought a writ of prohibition with the Court of Appeals to bar the judge from compelling disclosure of the Katz-Jamgotchian communications. The Court of Appeals denied the writ. This appeal followed.

## II. ANALYSIS

The standard for granting a writ of prohibition is set forth in *Hoskins v. Maricle* as follows:

> A writ . . . *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate

4

remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

150 S.W.3d 1, 10 (Ky. 2004); see also CR 81.

A writ of prohibition "is such an 'extraordinary remedy' that Kentucky courts 'have always been cautious and conservative both in entertaining petitions for and in granting such relief.'" *Newell Enterprises, Inc. v. Bowling*, 158 S.W.3d 750, 754 (Ky. 2005) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky.1961)).

Unless a question of law predominates the controversy, we review the Court of Appeals' decision to grant or deny a writ for an abuse of discretion. *Southern Financial Life Insurance Co. v. Combs*, 413 S.W.3d 921, 926 (Ky. 2013) (citation omitted).

### III. THE COURT OF APPEALS DID NOT ABUSE ITS DISCRETION BY DENYING THE PETITION FOR A WRIT OF PROHIBITION

Katz's principal arguments in support of the writ of prohibition are (1) the requested information is not relevant; and (2) the disclosure of the emails violates the attorney-client and work-product privileges. Katz also contends that the trial court and Court of Appeals erroneously determined that his privilege log was insufficient to demonstrate the privileges embedded within each of the 322 emails. He further asserts that the trial judge erred by failing to conduct an *in camera* review of the Jamgotchian emails before ordering their disclosure. Lastly, he argues that the emails are not discoverable pursuant to CR 26.02(4) and CR 26.02(3).

5

## A. Relevance of the Jamgotchian Emails

Katz contends that the writ of prohibition should have been issued because his email correspondence with Jamgotchian is irrelevant in the underlying action. He asserts that the requested emails concern only the Raphaelson matter and, since the present case concerns only the Fitzgerald litigation, the emails are irrelevant.

In *Grange Mutual Insurance Co. v. Trude,* we noted that "there will rarely be an adequate remedy on appeal if the alleged error is an order that allows discovery" because "[o]nce the information is furnished it cannot be recalled. . . . The injury suffered by petitioners . . . will be complete upon compliance with the order and such injury could not thereafter be rectified in subsequent proceedings in the case." 151 S.W.3d 803, 810–11 (Ky. 2004) (quoting *Bender,* 343 S.W.2d at 802; citing *Wal–Mart Stores, Inc. v. Dickinson,* 29 S.W.3d 796, 800 (Ky. 2000) (noting the lack of adequate remedy on appeal for disclosure of trade secrets)). There being no adequate remedy by appeal under these circumstances, the normal *Hoskins* analysis would then focus on whether the party seeking to shield discovery of the information would suffer great and irreparable harm.

Pretrial discovery in a civil action is not limited to admissible "relevant evidence." CR 26.02(1) provides that parties may have "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." It further provides: "It is not ground for objection that the information sought will be inadmissible at the trial if the information

6

sought appears reasonably calculated to lead to the discovery of admissible evidence." For pretrial discovery purposes, relevancy "is more loosely construed . . . than at the trial, and the Rule requires only relevancy to the subject matter involved in the action." *Richmond Health Facilities-Madison, LP v. Clouse*, 473 S.W.3d 79, 83 (Ky. 2015) (quoting *Maddox v. Grauman*, 265 S.W.2d 939, 941 (Ky. 1954)). In other words, "discovery includes the right to investigate," *Volvo Car Corp. v. Hopkins*, 860 S.W.2d 777, 779 (Ky. 1993), and the information sought in discovery need not be admissible at trial; it is enough that it "appears reasonably calculated to lead to admissible evidence."

One of the elements of MGM's malicious prosecution claim against Katz is that he acted toward MGM with malice when he initiated an unjustified judicial proceeding. *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016). Even though Katz's role in the Raphaelson suit is not at issue in MGM's malicious prosecution claim pertaining to the Fitzgerald suit, the two cases are clearly intertwined, at least to the extent that evidence of Katz's motive and Jamgotchian's involvement in the Raphaelson lawsuit could reasonably illuminate similar motivation and involvement in the Fitzgerald suit.

Under the broader standard of relevance contained in our discovery rules, we are not persuaded that the email exchanges between Katz and Jamgotchian in the time period immediately preceding the filing of the Raphaelson lawsuit fall outside the scope of discovery permissible under CR 26.02.

We note also that "it is well-settled that a trial court has broad discretion in resolving disputes in the discovery process, and we will not disturb a discovery ruling absent an abuse of that discretion." *Blue Movies, Inc. v. Louisville/Jefferson County Metro Government*, 317 S.W.3d 23, 39 (Ky. 2010) (citation omitted).

Accordingly, we are persuaded that the trial court and the Court of Appeals properly concluded that the email exchange between Katz and Jamgotchian may lead to the discovery of admissible evidence and that no substantial miscarriage of justice will occur as a result of the disclosure of those communications. The Court of Appeals did not abuse its discretion in determining that Katz was not entitled to a writ based on his assertion that the emails were not relevant.

## B. Attorney-Client Privilege and Work-Product Privilege

Katz also contends that the emails are protected from disclosure by the attorney-client/work-product privilege doctrine because Jamgotchian acted as the agent for Raphaelson in the Raphaelson lawsuit. *See* KRE 503. Katz contends that he communicated with Jamgotchian, who was acting on behalf of Raphaelson because Raphaelson was ill. As such, Katz's communication with his client's agent is covered by the same privilege as his communication directly with the client.

Because evidentiary privileges operate to exclude relevant evidence, "[t]he party asserting the privilege has the burden to prove the privilege applies." *Stidham v. Clark*, 74 S.W.3d 719, 725 (Ky. 2002) (quoting *United States v.*

8

*Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990)). Privileges are disfavored and must be strictly construed. *Id.* at 722-23. Further, blanket assertions of privilege are insufficient to establish the applicability of the privilege. *Id.* at 725.

The trial court rejected Katz's argument that Jamgotchian was a client of Katz or was acting as Raphaelson's agent or representative in his correspondence with Katz. We find no basis for disturbing this factual determination. *See Edwards v. Hickman*, 237 S.W.3d 183, 190 (Ky. 2007) (citing *Trude*, 151 S.W.3d at 810) (In the context of a writ case, a finding by the lower courts that a party has "failed to provide sufficient evidence that production of the documents would harm their competitive position, or that the documents were confidential and proprietary, . . . is subject to clear error review, the most deferential appellate review.").

Katz has given conflicting accounts of his relationship with Jamgotchian; at first disclaiming any significant relationship with him, and later asserting an indirect attorney-client relationship with him as an agent or representative of Raphaelson; and alternatively, asserting a relationship with Jamgotchian as a representative acting directly for Katz as a retained horse industry expert. Katz provided no documentation to verify these relationships but merely relies upon his own unsupported assertions. In light of these inconsistencies and lack of documentary evidence, we are satisfied that substantial evidence in the record supports the trial court's conclusion that no attorney-client relationship existed between Katz and Jamgotchian, and that Jamgotchian was not corresponding

9

with Katz as Raphaelson's agent. The trial court's findings are not clearly erroneous. For the same reasons we conclude that Katz is not entitled to a writ under the work-product privilege rule.

Moreover, as noted by the Court of Appeals, the privilege log presented by Katz contains only conclusory assertions that the emails are privileged. It provides no descriptive information concerning the communications. We are persuaded that the Court of Appeals correctly concluded that Katz failed to meet his burden of proving the applicability of the attorney-client and work-product privileges. "A general claim that all business and financial records are confidential simply is insufficient to defeat a proper discovery request." *Edwards*, 237 S.W.3d at 192. We are satisfied that the same rule extends to email communications. In summary, the Court of Appeals did not abuse its discretion in denying a writ based upon the attorney-client or work-product privileges.

## C. *In Camera* Review of Emails

Katz contends that the trial court erred by failing to conduct an *in camera* review of the Jamgotchian emails. The decision to conduct an *in camera* review is committed to the discretion of the trial court upon a showing that such review may yield evidence establishing the applicability of a privilege. *Stidham*, 74 S.W.3d at 727 (citing *United States v. Zolin*, 491 U.S. 554, 574-75 (1989)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

10

The trial court directed Katz to "produce a detailed privilege log with descriptions of the basis for an objection, date and description of the documents withheld sufficient to establish the existence of the elements of the privilege (i.e., more than their titles) so as to allow a meaningful review by this Court and any higher courts." In attempted compliance with this requirement Katz asserted that each email was a "Confidential communication made for the purpose of facilitating the rendition of professional legal services regarding the Raphaelson matter."

The Court of Appeals concluded that "the privilege log furnished by Katz did not provide sufficient information to establish the applicability of a privilege," and that the trial court, therefore, did not abuse its discretion in declining to conduct an *in camera* review. We see no reason to believe that the Court of Appeals erred in reaching this conclusion, and we would additionally note that, out of 322 emails, Katz was unable to produce anything that verified his claim of a privileged relationship with Jamgotchian. In the absence of any preliminary showing of such a relationship, the trial court was not unreasonable when it declined to engage in a burdensome *in camera* review.

**D. CR 26.02(4) and CR 26.02(3)**

Katz also argues that the circuit court erred by requiring the production of information subject to CR 26.02(4) and CR 26.02(3). The essence of this argument is that Katz's email correspondence with Jamgotchian is privileged because Katz had retained Jamgotchian as an expert in the horse racing industry in Raphaelson's case. CR 26.02(4) limits discovery of materials

11

related to expert witnesses, and CR 26.02(3) limits discovery of materials related to trial preparation materials.

Katz identifies the issue as being preserved for appellate review by having been presented to the Court of Appeals but notes that the Court of Appeals did not address the issue in its decision. However, "we will not address issues raised but not decided by the Court below." *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 927 (Ky. 2007) (quoting *Transportation Cabinet, Dept. of Highways v. Taub*, 766 S.W.2d 49, 51–52 (Ky. 1988)). With the Court of Appeals having not addressed this issue, and Katz having taken no steps to correct the oversight, we will not address Katz's CR 26.02(4)/CR 26.02(3) argument in this proceeding for the first time. However, we do note that this argument suffers from the same deficiencies as the previous arguments. It is supported only by bare and unsubstantiated allegations with no verifying documentation or other substantiation to lend credence to the claim.

## IV. CONCLUSION

We review a Court of Appeals' decision to grant or deny a writ under the abuse of discretion standard. *Southern Financial Life Insurance Co.*, 413 S.W.3d at 926. For the foregoing reasons, we are unable to conclude that the Court of Appeals abused its discretion in denying the requested writ; and accordingly, the opinion of the Court of Appeals denying Katz's petition for a writ of prohibition is affirmed.

All sitting. All concur.

12

COUNSEL FOR APPELLANT:

Tad Thomas
Lindsy Lopez
Thomas Law Offices, PLLC

COUNSEL FOR APPELLEE HONORABLE PAMELA R. GOODWINE:

Pamela R. Goodwine
Fayette Circuit Court

COUNSEL FOR REAL PARTY IN INTEREST MILLER, GRIFFIN & MARKS, P.S.C.:

William Todd Forester
Thomas W. Miller
Miller, Griffin & Marks, P.S.C.