RENDERED: APRIL 30, 2020
TO BE PUBLISHED
DATE 5-28-2020


# Supreme Court of Kentucky

## 2019-SC-000218-MR

COMMONWEALTH OF KENTUCKY                          APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2019-CA-000128-MR
JEFFERSON CIRCUIT COURT NO. 17-CR-000564


HONORABLE MARY SHAW, JUDGE,                        APPELLEE
JEFFERSON CIRCUIT COURT

AND

CHARLES RUTLEDGE                          REAL PARTY IN INTEREST


**OPINION OF THE COURT BY JUSTICE VANMETER**

**REVERSING AND REMANDING**

The Commonwealth of Kentucky appeals the Court of Appeals' denial of

its petition for a writ of prohibition. The Commonwealth filed a writ petition

upon the trial court's issuance of an order granting the defendant, Charles

Rutledge's, request for an *in camera* review of the alleged victim's ("victim")

therapy records during January 2017. The Commonwealth argues on appeal

(1) that the trial court erred in granting Rutledge's motion for *in camera* review,

and (2) that the trial court has no authority to order the Commonwealth to

provide it with the names of the victim's therapy providers. Finding the

Commonwealth's second claim meritorious, we reverse and issue a writ

1

quashing the trial court's order as written and directing the trial court on remand to follow our analysis, *infra,* on how to properly retrieve the relevant information from the victim.

## I. Factual and Procedural Background.

Rutledge was indicted on four counts of Incest, one count of Rape in the First Degree, one count of Sodomy in the First Degree, one count of Criminal Attempt Sodomy in the First Degree, one Count of Rape in the Second Degree, one count of Sodomy in the Second Degree, two counts of Sexual Abuse in the First Degree and one count of Possession of a Matter Portraying a Sexual Performance by a Minor. Except for the latter charge, all the crimes were allegedly committed against his step-daughter.

In November 2017, Rutledge filed a motion requesting that the trial court conduct an *in camera* review of any therapy or mental health records of the victim. The basis for Rutledge's motion was that the victim made inconsistent statements during a recorded police interview and a controlled call, and he intended to cross-examine her at trial about those statements. In the police interview, on January 17, the witness stated that she had started therapy the week before and started "vomiting" everything up in therapy. On January 31, in a controlled call with Rutledge, the witness stated that she had told her family about the allegations on December 31, 2016. The trial court initially denied Rutledge's motion, but after hearing arguments granted the motion as to only the records from the relevant time period—January 2017.

The trial court's order noted the inconsistencies that led to its decision.

Here, the alleged victim referenced therapy during her January 17, 2017 police interview and during a "controlled call" with the

2

Defendant placed on January 31, 2017. During the interview, the alleged victim stated it was during these therapy sessions that she recalled some of the numerous alleged sexual interactions she had as a child with the Defendant. She had been in therapy approximately 10 days prior to the interview and expected to remember more in the future. She also stated during the police interview that therapy allowed her to remember more of the alleged events, although she started 2017 wanting to "do something about" the alleged abuse. The Defendant requests psychotherapy records for treatment referenced during the interview and controlled call (i.e. therapy sessions that started in early 2017 through the date of the controlled call) because they could inform when the alleged victim could recall alleged abuse and how what she recalls compares to the information shared during the statement and controlled call.

The Commonwealth filed a motion to reconsider. The trial court heard arguments on the motion to reconsider, but ultimately denied the Commonwealth's motion. The Commonwealth petitioned the Court of Appeals for a writ of prohibition, which was denied. This appeal followed.

## II.    Standard of Review.

"[T]he issuance of a writ is inherently discretionary. Even if the requirements are met and error found, the grant of a writ remains within the sole discretion of the Court." *Caldwell v. Chauvin*, 464 S.W.3d 139, 145–46 (Ky. 2015) (citing *Edwards v. Hickman*, 237 S.W.3d 183, 189 (Ky. 2007)).

> A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Id.* at 145 (quoting *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004)).

3

In *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803 (Ky. 2004), we summarized the proper standard of review for writ petitions depending upon the class of writ and the ultimate decision of the Court of Appeals.

> [T]he proper standard actually depends on the class, or category, of writ case. De novo review will occur most often under the first class of writ cases, i.e., where the lower court is alleged to be acting outside its jurisdiction, because jurisdiction is generally only a question of law. De novo review would also be applicable under the few second class of cases where the alleged error invokes the "certain special cases" exception or where the error involves a question of law. But in most of the cases under the second class of writ cases, i.e., where the lower court is acting within its jurisdiction but in error, the court with which the petition for a writ is filed only reaches the decision as to issuance of the writ once it finds the existence of the "conditions precedent," i.e., no adequate remedy on appeal, and great and irreparable harm. If [these] procedural prerequisites for a writ are satisfied, whether to grant or deny a petition for a writ is within the court's discretion.
>
> But the requirement that the court must make a factual finding of great and irreparable harm before exercising discretion as to whether to grant the writ then requires a third standard of review, i.e., clear error, in some cases. This is supported by the fact that the petition for a writ is an original action in which the court that hears the petition, in this case the Court of Appeals, acts as a trial court. And findings of fact by a trial court are reviewed for clear error. Therefore, if on appeal the error is alleged to lie in the findings of fact, then the appellate court must review the findings of fact for clear error before reviewing the decision to grant or deny the petition.

*Id.* at 810 (citations and quotations omitted).

The Commonwealth asserts that its initial argument is proper as a writ of the second class, and its second argument fits under the certain special cases exception. Thus, we shall review each argument in turn.

### III. Analysis.

The Commonwealth's first argument is controlled by our decision in *Commonwealth v. Barroso*, 122 S.W.3d 554 (Ky. 2003). In *Barroso*, we held

4

that "the Compulsory Process Clause affords a criminal defendant the right to obtain and present exculpatory evidence, including impeachment evidence, in the possession of a third party that would otherwise be subject to the psychotherapist-patient privilege." *Id.* at 561. When weighing the defendant's rights under the Compulsory Process Clause and the privilege rights of a witness, this Court further held that "*in camera* review of a witness's psychotherapy records is authorized only upon receipt of evidence sufficient to establish a reasonable belief that the records contain exculpatory evidence." *Id.* at 564. Thus, we review whether the Court of Appeals abused its discretion in holding that Rutledge provided the required "reasonable belief."

Rutledge asked for therapy records dating back to 1999 in his original motion which the trial court denied. The trial court granted Rutledge's motion for reconsideration, but only as to records between January 1, 2017, and January 31, 2017, as these were the relevant times during which the victim's statements took place. In denying the Commonwealth's writ petition, the Court of Appeals held that "the records could inform when the prosecuting witness could recall the alleged abuse and how what she recalls compares to the information she provided in her statement to police and the controlled call." In *Barroso*, we held that "[i]f the psychotherapy records of a crucial prosecution witness contain evidence probative of the witness's ability to recall, comprehend, and accurately relate the subject matter of the testimony, the defendant's right to compulsory process must prevail over the witness's psychotherapist-patient privilege." 122 S.W.3d at 563. Here, as found by the trial court, the victim's inconsistent statements regarding her recollection of

5

events satisfies the "reasonable belief" standard set forth in *Barroso*, and no abuse of discretion occurred.

The Commonwealth next asserts that the trial court has no power to compel it to retrieve the names of the victim's therapy providers. It argues that the trial court's order (1) effectively forces the Commonwealth to be a part of the defense's investigation team, and (2) will force victims to waive privilege. While we agree with the premise of the Commonwealth's first argument, under *Barroso*, an avenue must exist for the defense team to receive specific records from a specific institution for an extremely limited time-period when the only unavailable information is the name of the institution.

In *Barroso,* we addressed the privilege arguments advanced by the Commonwealth. This Court held:

> [T]he trial judge's *in camera* inspection of J.H.'s psychotherapy records protected Appellee's constitutional rights without destroying J.H.'s interest in protecting the confidentiality of those portions of the records (in this case the entirety of the records) irrelevant to Appellee's interests.
>
> . . . .
>
> . . . As noted supra, a witness whose privileged information is compelled by court order has not disclosed it voluntarily. Thus, the privilege remains intact for purposes other than the criminal proceeding in which it was compelled.

*Id.* at 564–65. We thus reject the Commonwealth's second argument, since, as noted in *Barroso*, a privilege is not waived if compelled by court order. [1] 122 S.W.3d at 565.

---

[1] If we elected to follow the Commonwealth's approach we would essentially be "allowing the State to rely on a witness's testimony to convict a defendant of a crime, yet denying the defendant even an in camera review of materials that may significantly undermine that witness's credibility[.] [This] is a process that is anything but "due"; it

6

However, we recognize the quandary that the Commonwealth would be placed in if ordered to assist the defense by questioning its own witness. In *Barroso*, since the medical providers were known, we did not address procedural steps and remedies for when a witness's medical provider is unknown. Other states have addressed this issue.[2]

However, instead of directly following our sister states' procedures, we elect to carve out our own procedure in order to stay within *Barroso's* framework and best protect the rights of both the prosecuting witness and the defendant. Going forward, when, as here, the specific time frame and relevant information is known, but the medical provider is not, a defendant should file a motion for healthcare records. The Commonwealth may object, as it did here, and a *Barroso* hearing may take place. If the trial court determines that

---

is fundamentally unfair and creates too great a risk that an innocent defendant may be convicted." Clifford S. Fishman, *Defense Access to A Prosecution Witness's Psychotherapy or Counseling Records*, 86 Or. L. Rev. 1, 25 (2007).

[2] Several of our sister state jurisdictions have protected both defendants and witnesses by allowing *in camera* review if consent to waive privilege is obtained by the witness but allowing the privilege to remain intact if consent is not received. These states have determined that if the privilege is not waived for in camera review, the witness is barred from testifying at trial. *See, e.g., State v. Peeler*, 857 A.2d 808, 841 (Conn. 2004) (further discussing the proper steps under the Esposito procedure); *State v. Esposito*, 471 A.2d 949, 956 (Conn. 1984) (determining that witness has two chances to invoke privilege—before and after in camera review—and if privilege is invoked, testimony is stricken); *People v. Stanaway*, 521 N.W.2d 557, 577 (Mich. 1994) (holding that "if the complainant will not waive her statutory privilege and allow the in camera inspection after the defendant's motion has been granted, suppression of the complainant's testimony is the appropriate sanction[]"); *State v. Trammell*, 435 N.W.2d 197, 201 (Neb. 1989) (adopting Connecticut's approach); *State v. Gonzales*, 912 P.2d 297, 303 (N.M. Ct. App. 1996) ("we find no abuse of discretion in the district court's decision to prohibit Rachel from testifying as long as she refused to produce the disputed records for in camera review[]"); *State v. Shiffra*, 499 N.W.2d 719, 724–25 (Wis. Ct. App. 1993) ("Under the circumstances, the only method of protecting Shiffra's right to a fair trial was to suppress Pamela's testimony if she refused to disclose her records[]").

7

"evidence sufficient to establish a reasonable belief that the records contain exculpatory evidence" has been presented, the Commonwealth may, but is not required, to ask the witness for the names of his/her providers. If the witness provides the names, the Commonwealth is to file the names of the providers under seal with defense counsel having access. If the Commonwealth declines to ask or the witness refuses to provide the names of the providers such that the providers' names remain unknown, the defendant can file a subpoena for the witness to appear. The trial court should place the witness under oath and explain to him/her the limited nature of *in camera* review, that the witness is not waiving his/her privilege, and that the judge is the only one who will initially see any of the information.[3] 122 S.W.3d at 564. The trial court should also explain to the witness that the defendant is entitled to any exculpatory or potentially exculpatory information, as determined by the judge, and if the witness does not turn over the providers' names, that his/her testimony may be excluded at trial. At this point, the witness should be allowed to take a break and consult with the Commonwealth.

After consultation, the witness should retake the stand and be questioned on a limited basis only as to the names of his/her health care providers during the applicable time period. Based on the witness's answer, the defendant may then subpoena the records for *in camera* review. If the witness still refuses to answer, his/her testimony may be excluded at the discretion of the trial court.

---

[3] We emphasize that trial courts should keep a detailed record of each step of this process, as appellate courts will need to know exactly what the trial court looked at and what the defense was eventually allowed to see, if anything.

Thus, the *in camera* review protects the witness's privilege, and only when the trial court determines that exculpatory evidence exists within the records will confidential information be released to the defense. By using this new subpoena procedure, we stay within the *Barroso* framework, "obviat[ing] the need to complicate the procedure by placing the fate of the prosecution in the hands of a witness," and allow the Commonwealth to avoid the conflict of having to directly assist the defense team. 122 S.W.3d at 564–65.

## IV.    Conclusion.

We hold that while the trial court held a proper *Barroso* hearing and did not abuse its discretion in determining that a reasonable belief existed that exculpatory information may be found in the January 2017 records, on remand the trial court should follow the process identified above for retrieving these records and it should not order the Commonwealth to retrieve the names of the healthcare providers directly from the victim. Accordingly, the Court of Appeals' opinion is reversed, and the petition for writ of prohibition is granted. The trial court is instructed to follow the framework set forth above to retrieve the relevant documents for *in camera* review.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Jeanne Deborah Anderson
Assistant Attorney General

COUNSEL FOR APPELLEE:

Not Represented by Counsel

COUNSEL FOR REAL PARTY IN INTEREST:

Matthew Jess Farra